## H. C. METZGER *v.* SOUTHERN BANK.

[54 South. 241.]

1. BANKS. *Cashier and general agent. Knowledge. Ratification. Estoppel. Evidence.*

Where the cashier of a bank in liquidation is also general agent he has all the powers and authority of a cashier and also full authority to manage and control the same in the process of liquidation, and his knowledge of transactions resulting in a compromise of the bank's claim against a debtor is imputable to and binding on the bank.

2. CORPORATIONS. *Agent's authority.*

A corporation is not only bound by those acts of its agents which have been authorized in express terms by its board of directors, but is as much bound as a natural person by duly implied authority of its agents.

3. CORPORATIONS. *Ratification. Estoppel in pais.*

A corporation is governed, like an individual, by the same principle as to ratification of the acts of its agent and as to estoppel *in pais.*

4. CORPORATIONS. *Agency.*

Agency for a corporation may be proven and authority to act for it implied, just as in the case of natural persons.

5. EVIDENCE. *Admissibility.*

Testimony which is material in determining the question of ratification or estoppel should not be excluded.

APPEAL from the circuit court of Lauderdale county.
HON. JOHN L. BUCKLEY, Judge.

Suit by the Southern Bank against H. C. Metzger, from a judgment for plaintiff, defendant appeals.

The record discloses the following facts:

The Southern Bank, on account of its financial condi-
tion, suspended its banking business during the month of
March, 1908. At the time it closed its doors, and for
some time prior thereto, one J. C. Rushing was the
active cashier of said bank. On March 17, 1908, the
directors of said bank held a meeting, and by resolution
appointed one J. A. McCain to take charge of the ac-
counts and bills receivable of said bank, and to collect
the same. Pursuant to said appointment the said Mc-
Cain took charge of said accounts and bills receivable,
including the notes against Metzger sued on in this case.
Mr. McCain proceeded to collect said accounts and bills
receivable. After the meeting of the directors on March
17, 1908, Rushing remained in charge of the banking
house and the books of the bank, received and answered
all correspondence of the bank, collected some moneys
due the bank, and deposited the same in the Merchants'
& Farmers' Bank of Meridian, to the account of the
Southern Bank, and after said meeting he continued to
sign himself as cashier of the Southern Bank to checks
issued in the name of the bank, and to a deed executed
by the Southern Bank to certain real property, and to
the contract with McCain, and was the representative
of the bank who dealt with the public after March 17,
1908. Rushing received the same salary after March 17,
1908, that he did before.

Rushing testified that he knew, shortly after the meet-
ing of Metzger's creditors, that his (Metzger's) affairs
were in the hands of a committee of his creditors, and
that his assets would be distributed ratably among his
creditors, and that the Southern Bank would get the
larger share of the assets, as it was the largest creditor.
The said McCain deposited what money he collected for

the bank to the account of J. A. McCain, Receiver, in the Merchants' & Farmers' Bank.

On May 6, 1908, Metzger, finding that he was unable to pay his creditors, addressed a letter to each of them, advising them of his condition, and asking them to meet him at the office of his attorneys, at which time he would bring his books, and make a full statement of his assets, and ask that the same be sold for the benefit of his creditors, as it was his desire to keep out of the bankrupt court in order to save unnecessary expense. He requested that all creditors be represented at the meeting. At that time Metzger owed the Southern Bank $1772 and interest, all of which was past due. One of these letters was sent by Metzger through the mail, addressed to the "Southern Bank," at Meridian, Miss. This letter was received by Rushing, who was then in charge of said banking house, and receiving and answering the mail of the Southern Bank, and it was by him turned over to McCain. McCain attended the meeting of Metzger's creditors at the time and place mentioned, as representative of the Southern Bank. About ninety per cent of the creditors of Metzger were represented at said meeting, and those creditors present appointed a committee of three, one of whom was McCain, to take charge of all the property of Metzger, and to convert the same into cash, and to distribute the proceeds ratably among his creditors. Notices to this effect were then sent to all other creditors. Thereafter the assets of Metzger were sold, and the amount received therefor applied to the payment of his debts.

Soon thereafter the said McCain, for and on behalf of the Southern Bank, signed the following release: "The undersigned, one of the creditors of H. C. Metzger, hereby accepts the above proposition of settlement,

and, upon the delivery of the said assets of H. C. Metzger to the committee of creditors, does hereby release the said H. C. Metzger from all further liability to the undersigned on account of all demands to date, and does hereby authorize and empower the said committee of said creditors, composed of John Lyle, A. J. Lyon, and Joe McCain, to dispose of said assets of said H. C. Metzger for the benefit of his creditors, and to distribute the same as hereinabove proposed to the creditors of said H. C. Metzger, shown on a list (Exhibit A) to his proposition. [Signed] J. A. McCain." All of Metzger's creditors signed a release similar to the one signed by McCain for the bank.

This committee sold all of the personal property belonging to Metzger, and deposited the proceeds in the Citizens' National Bank to the credit of Jno. Lyle, Chairman. On the 7th day of November, 1908, said committee, through its chairman, issued the following check, payable to the Southern Bank, to cover its pro rata of the amount then in the hands of said committee, to wit: "No. 83, 1st dividend, 14%, H. C. Metzger, accepted. Merchants' & Farmers' Bank: Pay to the Southern Bank, or order, $274.95, two hundred & seventy-four dollars & 95-100 dollars. J. T. Lyle, Jr., Chairman."

It was in testimony that said check was sent through the mail addressed to the "Southern Bank." McCain testified that he did not receive said check; Rushing testified that he had no recollection of receiving it, but he testified that at the time said check was mailed he was receiving all mail addressed to the Southern Bank. Said check was deposited on the 10th day of November, 1908, in the Merchants' & Farmers' Bank, to the credit of the Southern Bank. There was no indorsement on the check. Rushing testified that the first knowledge he had of said

check was some time in the month of December, 1908, when he was checking up the account of the Southern Bank with the Merchants' & Farmers' Bank. No demand was made on Metzger by any representative of the Southern Bank for the payment of the notes sued on in this case after he turned his property over to his creditors.. On February 15, 1909, Metzger's mother died, leaving him an undivided one-half interest in her property. Soon after Mrs. Metzger's death the Southern Bank brought this suit. The Southern Bank, on the trial in the lower court, tendered to Metzger the amount of the above mentioned check.

Metzger filed several special pleas, in one of which he set up the release signed by McCain on behalf of the Southern Bank, alleging that McCain had authority to sign said release, and in another he set up the fact that the bank had ratified McCain's act, and in another special plea he pleaded that the bank was estopped by its conduct from contending that. McCain had no authority to sign said release. Replications were filed by the Southern Bank to each of said pleas, denying the authority of McCain to bind the bank, also denying that the bank had ratified McCain's act, and denying the facts set up in the plea of estoppel. On the trial in the court below Metzger offered proof of his mother's death, and the fact that he had inherited an interest in her property shortly before the filing of this suit; but this proof was excluded.

The court gave the following instructions for the plaintiff, which are also assigned as error:

No. 15: "The court charges the jury that, though Rushing knew that the two hundred and seventy-four dollars and ninety-five cents had been credited to the account of the plaintiff, yet if his information was merely

that it was a payment on the debt, and did not know of the compromise and release, such information or knowledge on the part of Rushing did not bind the plaintiff to the compromise and release.''

No. 18: ''The court charges the jury that J. C. Rushing, either as cashier or otherwise, had no authority to compromise the debt sued on or release the defendant from his debt, and the jury cannot find for the defendant on the idea that Rushing, as cashier, had authority to compromise said debt and to release the defendant, unless the jury believe from the evidence that plaintiff had knowledge of the compromise and acquiesced in same.''

No. 19: ''The court charges the jury that the authority of McCain to act for the plaintiff is measured and fixed by the minutes of the board of directors and the contract between the bank and McCain entered into in pursuance thereof, and that neither said minutes nor said contract authorized McCain to compromise the debt sued on or to release the defendant from said debt.''

No. 23: ''The court charges the jury that a ratification of unauthorized contract could not be made by the plaintiff, without full and complete knowledge of all the facts touching such fact, and if the jury believe from the evidence that McCain, as the agent of the plaintiff, compromised the debt sued on and released said defendant therefrom, and that said act was unauthorized, then it could not and was not ratified by any act of the plaintiff or its officers, unless at the time of such act the plaintiff had knowledge or information of the compromise and release, though the directors, Neville and Rushing, may have known that McCain attended the meeting of creditors, that a committee of creditors had the defendant's affairs in charge, and anything else that was done.''

*Neville & Stone,* for appellant.

1. We contend that the cashier of a bank is the general agent of a bank.

2. That the acts of a cashier or a general agent done within the apparent scope of his authority bind the bank, unless there were special restrictions imposed upon his power which special restrictions were known to the party dealing with the cashier.

3. That notice to the cashier is imputed to the bank. We will discuss these propositions in the order named.

1. "The cashier of a bank has greater inherent authority than any other corporate officer." Cook on Corporations, vol. 2, section 718 (Fifth Edition).

"In short he (cashier) is considered the executive officer, through whom and by whom moneyed transactions of the bank, in paying or receiving debts, and discharging or transferring securities are to be conducted." *Corser* v. *Paul,* 41 N. H. 24.

"The cashier of a bank is regarded as its chief executive officer. His office is to manage all of the affairs of the corporation not peculiarly committed to the board of directors and he is agent not of the directory, but of the corporation." *Bissell* v. *First National Bank,* 69 Pa. St. 415.

2. The second proposition is too elementary to require citation of authorities.

3. "A bank is charged with the knowledge acquired by its cashier, president or other officers pertaining to transactions within the scope of the bank's business." 5 Cyc. 460, and authorities cited in footnotes, especially note 18. See note on page 198 of 36 Am. Dec. under head of " Notice to Cashier of Bank." *Harris* v. *American Building & Loan Assn.,* 25 Southern 200; *Birmingham Trust & Savings Co.* v. *Louisiana Bank,* 20 L. R. A.

600; *Lownes* v. *City National Bank,* 22 L. R. A. (N. S.) 408; *City National Bank* v. *Martin,* 8 Am. State Report, page 635 of the opinion.

*Baskin & Wilbourn,* for appellant, filed an elaborate brief citing the following authorities:

*Fleckner* v. *Bank* of U. S., 8 Wheat. 338, 5 L. Ed., especially column 2, page 636; *Bank* v. *Howe,* 40 Minn. 390, 42 N. W. 200, 12 Am. St. Rep. 744; *Bridge Co.* v. *Bank,* 3 N. Y. 156; *Carey Lumber Co.* v. *Caine,* 70 Miss. 628, 13 South. 239; *Bank* v. *McAnulty* (Tex. Civ. App.), 31 S. W. 1091; *Crane* v. *Bedwell,* 25 Miss. 507; *Brown* v. *Mortgage Co.,* 86 Miss. 388, 38 South. 312; *McIver* v. *Abernathy,* 66 Miss. 79, 5 South. 519; *Co-Operative Association* v. *McConnico,* 53 Miss. 233; *Wilcox* v. *Routh,* 9 Smedes & M. (Miss.) 476; *Sherman* v. *Morris,* 43 Kan. 282, 23 Pac. 569; 19 Am. St. Rep. 134; *Curtis* v. *Leavitt,* 15 N. Y. 9; *Hooker* v. *Bank,* 30 N. Y. 83, 86 Am. Dec. 351; *Bank* v. *Kortright,* 22 Wend. (N. Y.) 348, 34 Am. Dec. 317; *Railroad* v. *Suddoth,* 70 Miss. 265, 12 South. 205; *Railroad* v. *Hardy,* 88 Miss. 746, 41 South. 505; *Railroad* v. *Byrd,* 89 Miss. 319, 42 South. 286; *In re Gillette* (D. C.), 104 Fed. 769; 16 Am. and Eng. Ency. of Law, 805; *Van Leuvan* v. *First National Bank,* 6 Lans. (N. Y.) 373; *Mechanics' Bank* v. *Schaumburg,* 38 Mo. 228; *Central Bank* v. *Levin,* 6 Mo. App. 543; 17 Am. and Eng. Ency. Law (1st Ed.), 139; *Atlanta Cotton Mills* v. *Indian Mills,* 147 Mass. 268, 17 N. E. 496, 9 Am. St. Rep. 698; sections 666 and 667, Pomeroys' Equity; Morse on Banks and Banking (4th Ed.), secs. 133, 134, especially; *Martin* v. *Webb,* 110 U. S. 7, 3 Sup. Ct. 428, 28 L. Ed. 49.

*Cochran & McCants,* for appellee.

If it be conceded against all the evidence in the record that Rushing received the check, the check itself did not advise him of the compromise and release. If it be

conceded against all the evidence in the case that he instructed McCain to attend the creditors meeting and to make a compromise, the bank is not bound by his acts for the following reasons:

1st. He had no power or authority to make the compromise.

2nd. If he had such power and authority, he could not delegate his authority to McCain.

3rd. The acts of both McCain and Rushing being neither in the actual nor apparent scope of their authority, the bank would not be bound by their acts.

The argument of imputed knowledge presented by counsel in their briefs is wholly untenable. If the contention of counsel was the law, a bank would be at the mercy of its cashier, and he could compromise it out of existence in a single day; and according to the argument of counsel, the bank would be bound by his acts, because he, the cashier, had knowledge, and his knowledge would be imputed to the bank. 1st Morse on Banks and Banking, sec. 152, pages 333, 334, 362; *Chemical National Bank* v. *Kohner,* 58 How. Rep. R. (N. Y.) 267; *Sandy River Bank* v. *Merchants' Bank,* 1 Bissell, 146; *Piedmount Bank* v. *Wilson,* 124 N. C. 561; *Bank of Commerce* v. *Hart,* 37 Neb. 197; *Merchants Bank* v. *Rudolph,* 5 Neb. 527; *Cochico Nat. Bank* v. *Haskell,* 51 N. H. 116; *Daviess County Savings Assn.* v. *Sailor,* 63 Mo. 24; *Gray* v. *Farmers' Bank,* 81 Md. 361.

WHITFIELD, C.

We have critically and carefully examined the facts in this case, as well as all the authorities cited touching the law. It would make too extended an opinion to set out in detail even the controlling facts in the record.

The reporter is directed to do this carefully. We will simply announce our conclusions as to the matters of fact and law involved.

We think the evidence abundantly shows that Rushing was not only the director and cashier of the appellee bank, but on the facts of this case its general agent. The bank was in process of liquidation, and he had all the power and authority, not only of a cashier, technically so considered, but very much more power. He was in general charge of all the affairs of the bank, with full authority to manage and control the same, in the process of liquidation. A careful survey of all the evidence touching the extent of his authority must lead to this conclusion. On this state of the case, his knowledge of the transactions with Metzger is imputable to the bank. The appellee bank is bound by his action. One of the fundamental errors running through the instructions given for the appellee in the case, seems to have been the impression that a corporation was bound only by those acts of its agents which have been authorized in express terms by its board of directors. This, of course, is not the law. The corporation is as much bound as a natural person by duly implied authority of its agents, as well as by authority expressly given; and a corporation is governed, like an individual, by the same principles as to the ratification of the acts of its agents and as to estoppel *in pais*. It was distinctly held in the case of *Carey* v. *Cain,* 70 Miss. 628, 13 South. 239, that agency for a corporation may be proved, and authority to act for it implied, just as in the case of natural persons. And see the reasoning in *Rivers* v. *Yazoo & Mississippi Valley R. R. Co.,* 90 Miss. 196, 43 South. 471, 9 L. R. A. (N. S.) 931. See, also, the following, amongst many other authorities: *Birmingham Trust & Savings Co.* v. *Louisiana Bank,* 99 Ala. 379, 13 South. 112, 20 L.

R. A. 600; *Bank* v. *Howe,* 40 Minn. 390, 42 N. W. 200, 12 Am. St. Rep. 744; *Bank* v. *McAnulty,* (Tex. Civ. App.), 31 S. W. 1091-1095, 1096, 1097; Morse on Banks and Banking (4th Ed.), § 166, and cases cited in note 3, page 371, and various other authorities, which are quoted in the admirable brief of the learned counsel for the appellant. On the facts of this case, the knowledge of Rushing was clearly the knowledge of the bank, within any correct statement of the rule on this subject to be found in the books. It follows, from these facts, that the following instructions given the appellee were erroneous, and should not have been given: Instructions No. 15, 18, 19, and 23.

In the course of the trial the court excluded the testimony which had theretofore been given of the date of the death of the mother of the appellant. The testimony showed plainly that this suit was not brought until within an exceedingly short time after her death. It was further shown that the appellant inherited valuable property from his mother. This, also, was error. This testimony was a material factor in determining the question of ratification or estoppel, as applied to the conduct of the appellee under all the testimony in this case.

The great difficulty with the ingenious and learned argument of the counsel for appellee is that it stresses too much the naked technical power of a cashier, considered simply as a cashier, and fails to look at the real power and authority in its full scope, which the evidence in this case plainly shows Rushing had, which was very much more than mere technical power usually exercised by a cashier. On the evidence in this case, Rushing was manifestly the general agent of the appellee.

We notice no other assignment at this time. What we have said indicates the course the case should take on a new trial. *Reversed and remanded.*

PER CURIAM. For reasons set forth in the above opinion, the judgment is reversed, and the cause remanded for a new trial.