PEARL REALTY CO. *v.* WELLS.

(Division B. Jan. 2, 1933. Suggestion of Error Overruled Jan. 16, 1933.)

[145 So. 102. No. 30252.]

Chalmers Potter and Green, Green & Jackson, all of Jackson, for appellant.

302

304

Lotterhos & Travis, of Jackson, for appellee.

306

**Ethridge, P. J.,** delivered the opinion of the court.

J. H. Wells was the complainant in the court below, and filed suit jointly against E. G. Flowers and the Pearl Realty Company, claiming five hundred dollars for services rendered in securing a cancellation of a lease on lot situated in Jackson, Mississippi, upon which the Tower building has been erected at the corner of Pearl and Roach streets.

It appears, that, prior to the organization of the Pearl Realty Company, which was organized for the purpose of erecting and owning the Tower building, an office building, E. G. Flowers, of the firm of Enochs & Flowers, a Massachusetts trust, was negotiating with G. T. Fitzhugh, husband and agent of Mrs. G. T. Fitzhugh, who owned the property at that time, upon which the Tower building is now situated, for the purchase of said property. Said property was leased for a term of years, at that time, to one J. Calhoun Smith. Wells was called over the telephone one morning to come to the Edwards House, where E. G. Flowers, G. T. Fitzhugh, and Webb Buie were in conference, negotiating with reference to securing the lot above referred to, for the purpose of erecting the Tower building thereon. Wells was called in on this occasion for the purpose of consultation as to the value of the property; there being a difference be-

tween E. G. Flowers, on the one side, and G. T. Fitzhugh on the other side, as to the reasonable value of the property. Wells, Buie, and Fitzhugh had a private conference in which Wells stated to Fitzhugh that he thought the price of the property was too high, and, after discussing the matter, a more favorable proposition was made by Fitzhugh to Flowers. In the negotiations, however, G. T. Fitzhugh made it clear that Mrs. Fitzhugh would not pay the expenses of having the lease canceled.

After the parties had negotiated and had reached an agreement on the price for the lot, E. G. Flowers stated to Wells to get busy and secure a cancellation of the Smith lease ''for us,'' using the word ''us'' instead of ''me.''

Wells did not make any charge for his visit to this conference, or what took place there, other than the request of Flowers to him to ''get busy and secure a cancellation of the lease.'' Acting on this request, Wells became active and took up the matter of a cancellation of the lease with Smith, the lessor. Enochs and Flowers owned a lot across the street from the building in which J. Calhoun Smith was conducting his business on the leased lot, and he finally agreed to surrender his lease on the condition of securing a lease of the lot across the street owned by Enochs & Flowers, after certain repairs and improvements on the building had been made, and for a certain sum of money in cash.

Various conferences were held between Wells and Smith in conducting these negotiations and between Wells and Flowers in reference thereto, resulting in Smith's demanding five thousand dollars for a cancellation of his lease. Flowers requested Wells to take the matter up with Fitzhugh and see if he would not share in the payment of five thousand dollars required to secure a cancellation of the lease. Wells had represented Mrs. Fitzhugh in procuring rentals and leases of her property in Jackson, Mississippi.

Wells did communicate with Fitzhugh, agent for Mrs. Fitzhugh, in regard to the matter of sharing in the payment of five thousand dollars for a cancellation of the lease, and finally Fitzhugh agreed that he would pay one-half, or two thousand five hundred dollars, as a donation or gratuity, so the deal could be carried through and, accordingly, sent his check for two thousand five hundred dollars to Enochs & Flowers for that purpose. Enochs & Flowers paid the five thousand dollars, and then contracted to lease to Smith the building owned by them for a term of years, at a given rental.

On the trial, E. G. Flowers testified that whatever he did in the matter he did for the Pearl Realty Company, a corporation, and not for himself personally.

After the negotiations between Flowers and Wells were entered into, the Pearl Realty Company was incorporated and organized, and acquired title to the lot and erected the Tower building.

Flowers further testified that all his acts in said matter were ratified and approved by the Pearl Realty Company after its organization.

It is insisted that there should have been a peremptory instruction for the appellants, Pearl Realty Company, based upon several reasons, one of which that the suit was filed as a joint obligation against Flowers and the Pearl Realty Company. It is contended that there could be no recovery against one, because the suit was a joint suit.

This objection was not raised in the court below, and, if it had been raised, the declaration could have been amended. Failure to make objection in the court below cannot be availed of here. Section 568, Code of 1930, and authorities there cited.

It is also insisted that the evidence is insufficient to constitute a contract, and that, if there was any contract at all, it was the contract of Enochs & Flowers with Wells, and not the contract of the Pearl Realty Company. Flowers' testimony shows conclusively that all

he did was for and on behalf of the Pearl Realty Company, and that all his acts in this matter were ratified by the Pearl Realty Company after its organization.

It is permissible for promoters to make contracts which, if ratified by corporations after they are organized, will bind the corporations. 7 R. C. L., pp. 81, 82, secs. 60, 61; Mulverhill v. Vicksburg Ry., Power & Mfg. Co., 88 Miss. 689, 40 So. 647, and Metzger v. Southern Bank, 98 Miss. 108, 54 So. 241.

A number of instructions given for the plaintiff are complained of as error. These have reference to Flowers as agent for the Pearl Realty Company. The jury, in these instructions, were told that, if Flowers employed the plaintiff, representing the Pearl Realty Company, and he was authorized to act for it, and his acts were afterwards ratified by that company, they should find for the plaintiff.

It is argued that Flowers could not act as agent of the Pearl Realty Company because, at the time the alleged contract was made, the Pearl Realty Company had not come into being. It is a sufficient answer to this contention, we think, to say that, after the corporation was created, it ratified what Flowers had done. It was in contemplation of the parties, who afterwards organized the corporation, to erect an office building, and to incorporate for that purpose.

It is next complained that the court erred in permitting the plaintiff, Wells, as a witness, to testify as to his understanding of who employed him. He was asked, while he was a witness, as follows: "Q. Mr. Wells, I will ask you what was your understanding as to who was employing you to perform these negotiations?"

Objection was made to this, but the court permitted the witness to answer as follows: "A. It was my full understanding that I was representing Mr. Flowers and his associates entirely."

The appellant then moved to exclude Wells' testimony in reference to what he understood as to who he repre-

sented, but the court ruled on this motion as follows: ''He might not have been authorized to work for any one, but I think it is perfectly competent for him to state the person that he was working for. Whether he would be entitled to employment, and whether there was a meeting of the minds would be another proposition, but I have no doubt that he is entitled to state who he considered to be the person that he was employed by and who he was working for.''

It is, of course, proper for a witness to state facts, and, whatever was said on that occasion was for the jury to draw its conclusion from, but we do not think this was reversible error. It was pertinent only for the purpose of showing that the plaintiff, Wells, was not performing these services as a gratuity.

When the facts are considered, the facts and inferences constitute a contract drawn from what was said and the conduct of the parties. Therefore the witness' answer as to what he thought or considered, while improper in form in which it was developed, is not reversible error.

It is next objected that the contract between Smith and Wells, acting for Enochs & Flowers, was improperly admitted in evidence. From what has been stated, it is clear that Wells' services were secured for the cancellation of this lease, so that the corporation thereafter to be created could erect an office building as it desired on the leased lot. The contract was mere evidence that the lease of Smith had been canceled or transferred to Enochs & Flowers. It was important to admit this contract, not for the purpose of founding a right upon the contract itself, but to show that J. H. Wells had secured that which he had been employed to secure.

The subsequent ratification of all of Flowers' acts have made the obligation incurred by Mr. Flowers to pay J. H. Wells for his services in securing a cancellation of the lease, the obligation of the Pearl Realty Company.

We find no reversible error, and the judgment of the court below is affirmed.

Affirmed.