310 So.2d 725 (1975)
FORTUNE FURNITURE MANUFACTURING COMPANY, INC.
v.
MID-SOUTH PLASTIC FABRIC COMPANY, INC.
No. 47975.
Supreme Court of Mississippi.
April 7, 1975.
*726 O'Barr, Coleman & Burns, Okolona, for appellant.
John D. Sibley, Okolona, for appellee.
Before GILLESPIE, ROBERTSON and SUGG, JJ.
GILLESPIE, Chief Justice.
Mid-South Plastic Fabric Company, Inc., (Mid-South) sued Fortune Furniture Manufacturing Company, Inc., (Fortune) in the Circuit Court of Chickasaw County for plastic goods sold to Fortune by Mid-South. Fortune admitted owing Mid-South the amount sued for, $32,962.63, but filed a set-off or counterclaim for $39,028.79, and demanded judgment against Mid-South for the $6,066.16 difference. Mid-South denied owing Fortune any part of the counterclaim and pleaded several affirmative defenses later to be mentioned. The jury found for Fortune in the amount demanded in the counterclaim. The court sustained a motion of Mid-South for judgment notwithstanding the verdict. Judgment was entered for Mid-South in the amount demanded in its declaration. Fortune appealed.
Fortune was engaged in manufacturing furniture in Okolona, Mississippi. On or before July 8, 1968, Phil Stillpass, who lived in New York, and W.E. Walker, who lived in Okolona, called at the office of Fortune and talked to Sidney Whitlock, President of Fortune, about plastics. Stillpass was in the business of selling plastics and Fortune needed plastics in the manufacture of furniture. A tentative oral agreement was reached whereby a company by the name of Mid-South would sell plastics to Fortune. Whitlock told Walker and Stillpass to send him a letter containing the terms of the contract. On July 8, 1968, the following letter was mailed to Whitlock and received in due course:
Mr. Sidney Whitlock, President Fortune Furniture Manufacturers, Inc. Okolona, Mississippi 38860
Dear Sid:
This is to confirm the agreement entered into this date between myself and Phil Stillpass on behalf of Mid-South Plastic Co. Inc. and you on behalf of Fortune Furniture Manufacturing Co. Inc.
We agree to maintain expanded and 21 oz. Plastic in the warehouse of Mid South Furniture Suppliers, Inc. in sufficient amounts to supply all of the plastic for your plant's use, and if for any reason we do not have the necessary plastic you will be at liberty to purchase the plastic from any other source and we will pay the difference in price paid the other source and our current price.
We also agree to pay Fortune a 2% rebate on the gross sale price of our plastic as an advertisement aid to your Company which rebate to be paid at your request.
We assure you that all fabrics you need will be in our warehouse at all times and we appreciate your agreeing to buy all of your plastics from us.
Very truly yours,
W.E. Walker, President
Mid-South was organized with a corporate charter dated July 22, 1968. Stillpass was elected chairman and secretary-treasurer *727 and W.E. Walker was elected president. No one on behalf of Mid-South, other than Walker and Stillpass, contacted Fortune concerning the sale of plastics. Fortune began buying all its plastics from Mid-South. It was only when Mid-South was unable to supply all of Fortune's needs that Fortune bought from other suppliers. The difference between the amount paid to other suppliers for plastic when Mid-South was unable to meet Fortune's requirements and Mid-South's price, plus the two percent rebate provided in the letter, totaled $39,028.79, the amount of Fortune's counterclaim. Other facts are stated in discussing the specific issues. The foregoing facts are stated in the light most favorable to Fortune for whom the jury found.
If the testimony on behalf of Fortune made a jury issue, the motion for judgment notwithstanding the verdict should have been overruled. Carlize v. Richards, 216 So.2d 422 (Miss. 1968).
There are two questions presented on this appeal.

1. Is Mid-South bound by the letter?
The principal argument of Mid-South is that the letter dated July 8, 1968, written by Walker, purportedly on behalf of Mid-South and as president thereof, is not binding because Mid-South did not come into existence until July 22, 1968, the date of the charter. It is contended by Mid-South that the letter could not have been the act or the creation of Mid-South which was not then a corporate entity and that there was no ratification or adoption of the contract by affirmative action of the company after its incorporation.
The general rule is that a contract made by promoters with a view towards incorporation will be binding upon the corporation if it accepts benefits of the contract with the full knowledge of the terms of the contract. Morgan v. Bon Bon Co., Inc., 222 N.Y. 22, 118 N.E. 205 (1917); Annot., 17 A.L.R. 452 (1922); 18 Am.Jur.2d, Corporations § 119 (1965).
There are several theories upon which corporations have been held liable, including the theory of adoption and the theory of ratification. In Pearl Realty Co. v. Wells, 164 Miss. 300, 145 So. 102 (1933), the Court spoke in terms of "ratification" and upheld a contract for services rendered in obtaining a cancellation of a lease to a lot upon which Pearl Realty Company subsequently erected a building. Pearl Realty Company was incorporated after the negotiations between the promoter of the corporation and Wells. In concluding that the corporation had ratified the contract made by the promoters, the Court said:
It is permissible for promoters to make contracts which, if ratified by corporations after they are organized, will bind the corporations. 7 R.C.L. pp. 81, 82, §§ 60, 61, Mulverhill v. Vicksburg Ry., Power & Mfg. Co., 88 Miss. 689, 40 So. 647, and Metzger v. Southern Bank, 98 Miss. 108, 54 So. 241. 164 Miss. at 311, 145 So. at 103.
An analysis of Pearl Realty Company indicates that the term "ratification" in that opinion does not refer to any formal act of the corporation, but rather that the corporation adopted the contract and received the benefits of it with full knowledge on the part of all parties concerned in the corporation's organization of the manner and conditions under which it had been obtained. The Court held that under such circumstances the contract was binding on the corporation.
The general rule is that adoption may be implied from the acts or acquiescence of a corporation without express acceptance or ratification, and the adopting corporation will be liable if its responsible officers have or are chargeable with knowledge of the facts upon which it acts. Annot., 17 A.L.R. 452 (1922).
Stillpass and Walker, the only executive officers of Mid-South, initiated *728 and concluded the agreement that was reduced to writing in the letter to Fortune. Stillpass admitted that Mid-South would not have been organized without Fortune's account. The jury was fully justified in finding that these two officers had full knowledge of the terms of the contract and took advantage of it to sell more than $1,000,000 in goods to Fortune as a result of the contract. We are of the opinion that the jury was justified under the evidence in finding that Mid-South was bound by the terms of the letter of July 8, 1968.

2. Is the letter a sufficient memorandum in writing to satisfy the statute of frauds?
In Derden v. Morris, 247 So.2d 838 (Miss. 1971), this Court held that there are three requirements as to the memorandum necessary to take a case outside the statute of frauds provisions of the Uniform Commercial Code: (1) The memorandum must evidence a contract for the sale of goods; (2) it must be signed by the party against whom enforcement is sought, and (3) it must specify a quantity.
Walker's letter provides for the sale of goods (expanded and 21 oz. plastic) and states a quantity ("all of the plastic for your plant's use"). The Uniform Commercial Code recognizes output or requirement contracts in Mississippi Code Annotated section 75-2-306(1) (1972) as follows:
A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded.
The letter is signed by Walker, who was elected president of Mid-South upon its organization, and as already found, this contract was adopted by Mid-South. We hold that the letter satisfies the statute of frauds and was binding upon Mid-South.
All factual issues were resolved against Mid-South by the jury, whose verdict was justified by the evidence. We hold the trial court erred in sustaining the motion for a judgment notwithstanding the verdict and judgment is entered here reversing that judgment, reinstating the jury verdict, and judgment entered here in favor of Fortune for $6,066.16, with interest at the rate of six percent (6%) from May 4, 1973.
Reversed and rendered.
RODGERS, P.J., and PATTERSON, INZER, SMITH, WALKER and BROOM, JJ., concur.