United States Court of Appeals,

Fifth Circuit.

No. 93-7483.

Lewis C. HOPPER, Individually and as General Partner of Gulf Coast Television, Ltd., and Joe Sanderson, Plaintiffs-Appellants,

v.

Harvey FRANK, et al., Defendants-Appellees.

March 15, 1994.

Appeal from the United States District Court for the Southern District of Mississippi.

Before JOLLY, WIENER, and EMILIO M. GARZA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal is from a summary judgment for the defendants on a legal malpractice claim. The plaintiffs, in their individual capacities, sued the defendant law firm for malpractice in connection with work the law firm did for their limited partnership, which is now in bankruptcy. We hold that the plaintiffs lack standing to bring this suit because they fail to establish an attorney-client relationship in their individual capacities separate from their partnership. We therefore affirm the judgment of the district court.

I

Lewis Hopper and Joe Sanderson were the majority stockholders of Four-O, Inc., a Mississippi corporation formed in 1981. Sometime prior to 1986, Hopper and Sanderson decided to have Four-O, Inc. raise the capital necessary to construct a television station in southern Mississippi through a limited partnership vehicle. Then, in 1986, Hopper and Four-O, Inc. formed the limited partnership, Gulf Coast Television, Ltd. ("Gulf Coast") and had the partnership purchase all of the assets of Four-O, Inc. Hopper was a general partner and Four-O, Inc. was the managing general partner of Gulf Coast. Gulf Coast engaged Harvey Frank, an Ohio resident, and his law firm, Benesch, Friedlander, Copelan & Aronoff ("the Benesch Firm"), an Ohio general partnership, for the purpose of preparing public offering documents. In 1987, the attempted public offering of limited partnership interests in Gulf Coast was unsuccessful. In 1988, Four-O, Inc. d/b/a Gulf Coast filed

a voluntary bankruptcy petition.

## II

In 1988, Hopper, Sanderson, and Gulf Coast filed a legal malpractice suit against Frank and the Benesch Firm (collectively, the "Benesch Firm") in Mississippi state court. Hopper and Sanderson claimed that in addition to the $4,000,000 damages suffered by Four-O, Inc. d/b/a Gulf Coast, they had suffered separate damages in their individual capacities of $4,000,000 each. The three plaintiffs alleged that the Benesch Firm's delay in providing the final public offering documents did not give the plaintiffs sufficient time to sell the limited partnership interests. The plaintiffs argue that this delay by the Benesch Firm thus caused the failure of the offering and their consequent financial losses. On August 12, 1992, the Benesch Firm removed to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

On March 15, 1993, the district court entered summary judgment for the Benesch Firm against Gulf Coast and against Hopper and Frank as individuals. First, the district court reasoned that Gulf Coast's $4,000,000 claim was probably part of Four-O, Inc.'s bankruptcy estate, which only the bankruptcy trustee could bring. Second, the district court reasoned that two letters dated in 1986 made it clear that despite Hopper's and Sanderson's bare assertions in their affidavits that they had employed the Benesch Firm as individuals, the attorney-client relationship was between the Benesch Firm and Gulf Coast only; thus, any malpractice claim arising out of that relationship could be brought by Gulf Coast only. In short, Hopper and Sanderson had no standing to sue. On March 29, Hopper and Sanderson filed a motion to reconsider or for a new trial. In support of their alternative motions, Hopper and Sanderson offered correspondence dated in 1985 between Hopper and the Benesch Firm regarding the public offering and Gulf Coast and claimed the need for more discovery. On June 23, the district court entered an order denying both motions reasoning that it had ruled on the summary judgment based the evidence before it at that time and that the motion for further discovery was untimely. On July 22, Hopper and Sanderson filed a joint notice of appeal; Gulf

Coast, however, did not join in this appeal.[1]

## III

On appeal, Hopper and Sanderson contend that the district court erred in granting summary judgment to the Benesch Firm on the grounds that there was no attorney-client relationship between them, as individuals, and the Benesch Firm that encompassed the allegedly inadequate services. Thus, Hopper and Sanderson contend that the district court erred in concluding that Hopper and Sanderson lacked standing to sue.

An attorney-client relationship provides standing for a legal malpractice suit.[2] *See Singleton v. Stegall,* 580 So.2d 1242, 1244 (Miss.1991). The existence of an attorney-client relationship is determined under state law.[3] Mississippi adheres to the general rule that an attorney-client relationship arises when:

> (1) A person manifests to a lawyer the person's intent that the lawyer provide legal services for the person;
>
> and

---

[1]On appeal, Hopper and Sanderson have apparently deferred to the bankruptcy trustee to bring any action on behalf of Four-O, Inc. d/b/a Gulf Coast, Ltd. *See Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) (holding corporate debtor's cause of action passed to bankruptcy estate).

[2]On appeal—in their reply brief—Hopper and Sanderson for the first time raise the issue of whether they would have standing to sue the Benesch Firm outside of an attorney-client relationship. Hopper and Sanderson cite *Century 21 Deep South Properties, Ltd. v. Corson,* 612 So.2d 359, 373-74 (Miss.1992), in which the Mississippi Supreme Court held that an attorney-client relationship, instead of being a mandatory prerequisite, is but one factor in determining the duty owed to the plaintiff, if any. In *Corson, id.* at 374, it was clear that the title search produced by the attorney would be relied on by the purchasers of the subject real estate. Although we find it questionable whether Hopper or Sanderson, as individuals, possessed any right to reasonably rely on the Benesch Firm to timely provide the public offering materials to the partnership, we need not address the matter, because Hopper and Sanderson only raised the issue in their reply brief. *See Baris v. Sulpicio Lines, Inc.,* 932 F.2d 1540, 1546 n. 9 (5th Cir.) ("Customarily we decline even to consider arguments raised for the first time in a reply brief."), *cert. denied,* --- U.S. ----, 112 S.Ct. 430, 116 L.Ed.2d 449 (1991). In any event, Hopper's and Sanderson's affidavits in opposition to summary judgment failed to support with sufficient particularity why they had grounds to reasonably rely on the timeliness of the delivery of the public offering documents as individuals. *See Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990), *cert. denied,* --- U.S. ----, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993).

[3]The parties agree that Mississippi substantive law controls this case.

(2)(a) The lawyer manifests to the person consent to do so, or (b) fails to manifest lack of consent to do so, knowing that the person reasonably relies on the lawyer to provide the services, or (c) a tribunal with power to do so appoints the lawyer to provide the services.

*Singleton,* 580 So.2d at 1244 n. 2 (quoting *Restatement of The Law: The Law Governing Lawyers* § 26 (Prelim. Draft No. 6, July 25, 1990)).

However simple the above formula may appear, difficulties arise when trying to apply it to individuals and the business entities they represent.

The necessity of determining whether an attorney-client relationship exists often arises in an ethical context. Pursuant to section 73-3-143, the Mississippi Bar's Board of Commissioners has adopted Model Rule of Professional Conduct 1.13 that generally provides that when a lawyer represents an organization, he represents the organization as an entity instead of its officers or representatives. The American Bar Association ("ABA") Opinion 91-361 interprets Model Rule 1.13 in answering the question, "When does a partnership's lawyer have an attorney-client relationship with an individual partner?" The opinion provides:

> [A] lawyer who represents a partnership represents the entity rather than the individual partners unless the specific circumstances show otherwise....
>
> ... This analysis may include such factors as whether the lawyer affirmatively assumed a duty of representation to the individual partner, whether the partner was separately represented by other counsel when the partnership was created or in connection with its affairs, whether the lawyer had represented an individual partner before undertaking to represent the partnership, and whether there was evidence of reliance by the individual partner on the lawyer as his or her separate counsel, or of the partner's expectation of personal representation....

(citing *Quintel Corp., N.V. v. Citibank, N.A.,* 589 F.Supp. 1235, 1240 (S.D.N.Y.1984) (recognizing that limited partnership is analogous to a corporation for purposes of determining existence of attorney-client relationship with owners); *Security Bank v. Klicker,* 142 Wis.2d 289, 418 N.W.2d 27 (1987) (stating that attorney-client relationship between partnership's lawyer and individual partner is not automatic)).

Further, ABA Opinion 91-361 recognizes that a lawyer's representation of a partnership may preempt the prior representation of the partners as individuals. Similarly, Mississippi courts recognize that once a corporation adopts a preformation contract that was made by one of its incorporators with a view toward forming the entity, the corporation preempts the incorporator's status as a party

to the contract and, thus, assumes the incorporator's liability on that contract.  *See Fortune Furniture Mfg. Co., Inc. v. Mid-South Plastic Fabrication Co., Inc.,* 310 So.2d 725, 727 (Miss.1975) (holding the corporation liable on a preformation contract that it adopted after form ation);  18 Am.Jur.2d *Corporations* § 131 (1985) ("[I]f the person dealing with the promoter knew that the corporation did not exist and that the promoter did not intend to be liable, the promoter will not be liable [on the preformation contract]");  *see generally, Mulvihill v. Vicksburg Ry., Power and Mfg. Co.,* 88 Miss. 689, 40 So. 647, 650 (1906) (citing *Whitney v. Wyman,* 101 U.S. (11 Otto) 392, 396, 25 L.Ed. 1050 (1879) (holding that individual directors were not liable individually on preformation contract later ratified by corporation)).  ABA Opinion 91-361 further provides, "There is no logical reason to distinguish partnerships from corporations or other legal entities in determining the client a corporation represents."  Thus, the controlling legal framework for our review of the summary judgment will focus on the factors listed in ABA Opinion 91-361, including the possibility of preemption by Gulf Coast of any preformation attorney-client relationship established with Hopper and Sanderson as individuals.

IV

Against this background, we examine whether the district court erred in granting summary judgment to the Benesch Firm—on grounds of plaintiffs' lack of standing—because no attorney-client relationship existed between that firm and Hopper and Sanderson as individuals.  Hopper and Sanderson contend that the district court erred because there was a genuine issue of material fact as to whether they had an attorney-client relationship with the Benesch Firm.

We review the district court's grant of summary judgment *de novo,* applying the same standards used by the district court.  *United States v. Arron,* 954 F.2d 249, 251 (5th Cir.1992).  A party is entitled to summary judgment only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits before the court at the time of summary judgment show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Fields v. City of South Houston,* 922 F.2d 1183, 1187 (5th Cir.1991).  Once the moving party, here the Benesch Firm, carries its burden of proving that there is no material factual dispute, *Celotex Corp.*

*v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the burden shifts to the nonmovants, here Hopper and Sanderson, to show that summary judgment should not lie. *Lavespere,* 910 F.2d at 178. Hopper and Sanderson "must discharge that burden by ... either submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, [that] set out specific facts showing a genuine issue exists." *Lavespere,* 910 F.2d at 178.

The Benesch Firm submitted two types of evidence in support of its motion for summary judgment. First, the Benesch Firm offered the affidavit of Frank in which he stated that the Benesch Firm had never performed any legal services for Hopper or Sanderson as individual partners, had never received payment from either of them, and that Hopper and Sanderson had refused to guarantee the fees payable by Gulf Coast for the legal services rendered to that entity. *See Singleton,* 580 So.2d at 1244 (holding that the "client's payment of a lawyer's fee" proves the existence of an attorney-client relationship, although it is not an absolute prerequisite). Second, the Benesch Firm offered two letters. The first letter, dated July 29, 1986, was from Hopper, in his capacity as a president of Four-O, Inc., the managing general partner of Gulf Coast, to the Benesch Firm. The second letter, dated February 27, 1987, was from the Benesch Firm to Gulf Coast, to the attention of Mississippi attorney, John Low. Both of the letters indicated that the Benesch Firm would prepare the final public offering documents for the "issuer,"[4] Gulf Coast—not Hopper and Sanderson as individuals—and that Gulf Coast—not Hopper or Sanderson—would pay the Benesch Firm for those services. These affidavits and letters shifted the burden of proof to Hopper and Sanderson. *Lavespere,* 910 F.2d at 178.

In response, Hopper and Sanderson only offered their own affidavits—identical to each other—to support the existence of an attorney-client relationship between them and the Benesch Firm. In pertinent part, the Hopper and Sanderson affidavits, in a conclusory manner, stated:

> [Hopper, Sanderson, and Gulf Coast] employed [the Benesch Firm] ... to represent them collectively regarding the formation of a limited partnership to finance a television station ...

---

[4]Generally, the "issuer" in the public offering of limited partnership interests will be the limited partnership itself or the general partner on whose financial strength the success of the limited partnership depends. *See SEC v. Murphy,* 626 F.2d 633, 642-44 (9th Cir.1980). In this case, the limited partnership, Gulf Coast, purchased all the assets of Four-O, Inc., its managing general partner. Thus, only Four-O, Inc. or Gulf Coast could have been the issuer—not Hopper, another general partner, or Sanderson, a stockholder in Four-O, Inc.

[and] [t]oward the above ends, the [Benesch Firm] performed legal services for [Hopper, Sanderson, and Gulf Coast].

Based on the affidavits and exhibits before the district court at the time of summary judgment, we are compelled to agree that there is no genuine issue of material fact with respect to the existence of an attorney-client relationship between Hopper and Sanderson as individuals and the Benesch Firm. This conclusion is all the more certain when we focus on the injury that forms the basis of this action—the timing of the delivery of the final public offering documents. The broad and conclusory assertion in the affidavits that Hopper and Sanderson engaged the Benesch Firm to form a limited partnership to raise money to finance a television station does not reflect an explicit and clear assertion—much less "evidentiary documents ... set[ting] out specific facts," *Lavespere,* 910 F.2d at 178—that the Benesch Firm undertook an affirmative duty to represent Hopper or Sanderson separately from the partnership with respect to the project at issue—the preparation of the final public offering documents for Gulf Coast. *See* ABA Opinion 91-361 (stating attorney's undertaking of an affirmative duty to represent partner individually is important in determining separate attorney-client relationship). Further, Hopper and Sanderson made no assertions regarding any reasonable reliance or expectation that the Benesch Firm would represent them individually. *See id.* (stating individual's reliance and expectations are important in determining separate attorney-client relationship). Finally, Hopper and Sanderson did not address whether they were separately represented at the formation of Gulf Coast, or afterwards. *See id.* (stating separate representation is important in determining separate attorney-client relationship).

At best, the documents before the district court reflected that Hopper and Sanderson initially retained the Benesch Firm, and that the firm thus represented them individually until the formation of the partnership, which was then used for the purpose of financing a television station. Once the partnership was in place, however, the summary judgment record reveals that the formation of Gulf Coast preempted any prior relationship with Hopper and Sanderson with respect to the delivery of the final public offering documents—a project that facially appears to relate only to the issuer, Gulf

Coast, who would receive and invest the funds raised in the public offering.[5]  *See* ABA Opinion 91-361 (recognizing attorney-partnership relationship can preempt prior attorney-individual relationship). Indeed, even if an attorney-client relationship existed with Hopper and Sanderson prior to the formation of Gulf Coast, Gulf Coast's acceptance of the benefits of the attorney-client relationship—the final offering documents—and both parties' agreement that Hopper and Sanderson would not pay or be personally liable for any legal fees, make clear that the attorney-client relationship with Gulf Coast preempted any prior arguable relationship with Hopper and Sanderson. *See* 18 Am.Jur.2d *Corporations* § 131 ("[I]f the person dealing with the promoter knew that the corporation did not exist and that the promoter did not intend to be liable, the promoter will not be liable ..."); *see generally, Mulvihill,* 40 So. at 650 (citing *Whitney v. Wyman,* 101 U.S. (11 Otto) at 396 (holding that promoters were not liable under a preincorporation contract made for benefit of corporation where plaintiff knew that corporation did not exist at time of execution and parties intended corporation to be liable)). Thus, the affidavits fail to meet the burden of showing, through specific and pertinent facts, the existence of a genuine issue of material fact regarding the absence of an attorney-client relationship between the Benesch Firm and Hopper and Sanderson, as individuals, that encompassed the timing of the delivery of the final public offering documents. *See Rosas v. United States Small Business Admin.,* 964 F.2d 351, 358 (5th Cir.1992) (holding that the nonmovant's affidavits failed to meet the requirements for specificity to raise a fact issue to defeat summary judgment); *Washington v. Armstrong World Indus., Inc.,* 839 F.2d 1121, 1123 (5th Cir.1988) (holding that the nonmovants must present more than a "metaphysical doubt" regarding the material facts).[6]

---

[5]Sanderson's interest in Gulf Coast was only as a shareholder of its managing general partner, Four-O, Inc. Sanderson was not a partner in Gulf Coast. Thus, his interest in the public offering project is even further removed than Hopper, who was a general partner in Gulf Coast.

[6]Hopper and Sanderson also indirectly argue that certain 1985 correspondence, which they submitted with their motion for reconsideration, establishes their attorney-client relationship with the Benesch Firm. Because the district court did not consider the 1985 correspondence, we review that court's decision to exclude it, and to deny the motion for reconsideration under an abuse of discretion standard. *See Fields,* 922 F.2d at 1188. Because Hopper and Sanderson evidently had access to the 1985 correspondence at the time of the summary judgment and offered no reason for their belated proffer of the correspondence, the district court did not abuse its

V

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

discretion in refusing to consider it. *See Waltman v. International Paper Co.,* 875 F.2d 468, 473-74 (5th Cir.1989) (refusing to consider on appeal evidence first offered with motion for reconsideration of summary judgment when offeror gave no explanation of why such evidence, which was available at the time of summary judgment, was not offered in opposition to summary judgment). Further, we note that the correspondence that deals with a draft registration statement for Gulf Coast does not address the possibility of the partnership's preemption of any relationship that Hopper and Sanderson may have had with the Benesch Firm. *See generally, Fortune Furniture,* 310 So.2d at 272 (stating that a corporation adopts a preincorporation contract by knowingly receiving the benefits of such contract). Thus, the district court did not abuse its discretion by refusing to consider the 1985 correspondence and denying Hopper and Sanderson's motion for reconsideration.