**W.T. SMITH, Plaintiff–Appellant,**

v.

**STATES MARINE INTERNATIONAL, INC., et al., Defendants,**

**Central Gulf Lines, Inc., and Anchorage Tankship Corporation, Defendants–Appellees.**

No. 88–3152.

United States Court of Appeals, Fifth Circuit.

Feb. 3, 1989.

Judy Guice, Paul T. Benton, Biloxi, Miss., for plaintiff-appellant.

George R. Alvey, Jefferson R. Tillery, New Orleans, La., for Cent. Gulf Lines, Inc.

Clayton Ramsey, James B. Kemp, Stephanie W. Jumonville, New Orleans, La., for Anchorage Tankship Corp.

Before CLARK, Chief Judge, TIMBERS * and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The district court rendered a summary judgment deciding that a ship engineer who seeks to recover for a hearing loss occasioned by repeated exposure to loud noises in engine rooms had a reasonable opportunity to discover that his disability

---

**14.** Boutwell Deposition, Record at 140–41.

* Circuit Judge of the Second Circuit, sitting by designation.

was caused by this exposure before he consulted a doctor, and, therefore, that the statute of limitations on his causes of action against the vessels aboard which he had worked had begun to run. Because the determination of the factual question, whether he actually knew or had a reasonable opportunity to learn the cause of his hearing loss at least three years before he filed suit, remains in dispute, we reverse the summary judgment.

## I.

W.T. Smith worked as an engineer aboard various Merchant Marine vessels intermittently from 1942 to 1966, and continuously from 1966 until his retirement in 1982. During the latter period, he sailed aboard vessels owned by Central Gulf Lines, Inc., States Marine International, Inc., and Anchorage Tankship Corporation.

According to the record now before us, while working in the engine rooms, Smith was exposed every day to noises so loud that he could communicate with fellow workers only in writing. He occasionally experienced temporary hearing loss while at work, but after several hours off duty, his hearing would return to normal; "[w]hen you get away from it, you settle down, it don't bother you as bad," Smith testified in deposition. Despite exposing their employees to such working conditions, the vessel owners never issued or made available any type of protective hearing device. Smith placed cotton in his ears from time to time, but only with reluctance, since it interfered with his ability to do his job.

Smith took an audiogram in 1969 as part of a regular physical exam, and it revealed no functional hearing impairment. In the mid-1970's, when he was in his early fifties, Smith first noticed problems with his hearing: he often could not understand telephone conversations; his wife complained that he talked loudly and set the volume on the television excessively high;

and his friends voiced similar complaints. Because he thought that his hearing problem was due to advancing age, Smith ignored the entreaties of his wife and friends to seek medical advice. His hearing was so poor by 1982, however, that he retired from work, and could no longer use a telephone or watch television enjoyably. In May, 1986, Smith sought medical attention for his hearing problem for the first time, consulting Dr. Jason Smith, an ear, nose, and throat specialist, who concluded that Smith had sustained 42% binaural hearing loss caused by repeated exposure to excessive noise.

On February 2, 1987, almost five years after he had last worked as an engineer, Smith sued States Marine, Central Gulf, and Anchorage Tankship for damage to his hearing, invoking the Jones Act[1] and the general maritime law, each of which is governed by a three-year statute of limitations.[2] The shipping companies moved for summary judgment on the ground that Smith's causes of action were time-barred. The district court granted the companies' motion, finding that "by the mid 1970's, [Smith] possessed or had reasonable opportunity to discover the critical facts of his injury, ... [and Smith] knew or had reasonable opportunity to discover that the cause of his hearing problem was his exposure to loud noise."

## II.

Neither the historical facts of this case as set out above, nor the applicable legal standard as enunciated in Clay v. Union Carbide Corp.[3] and Albertson v. T.J. Stevenson & Co., Inc.[4] is in dispute. The only question is one of fact: whether Smith "possessed or had a reasonable opportunity to discover the critical facts of his injury and its cause"[5] at least three years before he filed suit. If he did, the statute of limitations runs from that date and now precludes his suit.

1. 46 U.S.C. § 688.

2. 45 U.S.C. §§ 56, 763(a).

3. 828 F.2d 1103 (5th Cir.1987).

4. 749 F.2d 223 (5th Cir.1984).

5. Clay, 828 F.2d at 1107 (emphasis supplied).

When, on summary judgment, the parties contest inferences derived from undisputed historical facts, a "court must ... draw every reasonable inference in favor of the party opposing the motion ... for summary judgment."[6]

That Smith knew in the mid–1970's that he was suffering significant hearing impairment is beyond genuine dispute. Smith challenges only the district court's finding that he "knew or had reasonable opportunity to discover the *cause* of his hearing problem" at least three years before he filed suit (emphasis supplied). When he knew or should have known its cause depends on circumstantial evidence and inferences to be drawn by the trier of fact from the evidence proffered. Unless reasonable persons could conclude only that by 1984 Smith knew or had a reasonable opportunity to discover that repeated exposure to loud noises in engine rooms had caused his hearing loss, it was improper for the court to reach this conclusion on summary judgment.

### III.

If we credit Smith's affidavit, as we must at this stage, it is clear that he did not actually know the cause of his injury until he saw Dr. Smith in 1986.

> None of my employers throughout my work history ever advised me that my exposure to noise might result in hearing loss, and I was totally unaware of this possible connection until being told by ... Dr. Smith in May 1986.... [B]ecause none of my employers had warned me that exposure to noises could cause permanent hearing loss, I had absolutely no idea that the hearing loss I experienced in the mid to late 70's and thereafter was caused by exposure to noise. Instead, I thought that the problems I was having were caused by my increasing age. I now understand that that assumption was incorrect.

Summary judgment could not properly be rendered, therefore, unless Smith *should* have appreciated that his hearing loss was attributable to long-term exposure to loud noises. Dr. Smith's affidavit, however, strongly suggests that this inference may be mistaken.

> Noise induced hearing loss is a cumulative permanent loss of hearing that develops gradually over years of exposure to hazardous noise. This latent occupational disease involves a long, slow, progressive process that subtly wears away an individual's hearing. Because of the cumulative nature of this disease, injury ... is not discernable at the time of exposure and it is virtually impossible to correlate the progression of the disease with specific exposures on specific dates.... [Not only would it] have been impossible for [Smith] to know of this injury at the time of his many exposures[, but b]ecause of the progressive nature of this occupational disease, *victims who have not been made aware of the correlation between noise exposure and hearing loss do not ordinarily attribute the loss of hearing to their exposure to noise.* (emphasis supplied)

The shipping companies' medical experts, otolaryngologist Dr. Ilgenfritz and audiologist Dr. Walters, confirmed in their depositions that many patients with noise-induced hearing loss do not associate loud noises with hearing problems.

According to this uncontradicted medical testimony, Smith could have known of the cause of his injury only if he actually knew of the general correlation between noise exposure and hearing loss. There is, however, no evidence in the record from which to deduce this factual predicate. While Smith testified that he had experienced temporary hearing loss immediately after being exposed to loud noises, there is no evidence that he was aware in the 1970's of the correlation between loud noises and permanent hearing impairment.

**6.** *Murphy v. Georgia–Pac. Corp.,* 628 F.2d 862, 866 (5th Cir.1980); *Penton v. Crown Zellerbach Corp.,* 699 F.2d 737, 741 (5th Cir.1983); *Hodges v. Exxon Corp.,* 727 F.2d 450, 452 (5th Cir.1984); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1216 (5th Cir.1985); *Harbor Ins. Co. v. Trammell Crow Co., Inc.,* 854 F.2d 94, 98 (5th Cir.1988).

A jury might credit Smith's testimony that, shortly after his fiftieth birthday, he thought his hearing loss was caused simply by the aging process, the "only ... illness [man] ... cannot find an escape from."[7]

In *Clay v. Union Carbide Corp.*, the district court found that the victim knew or should have known of the cause of his injury; Clay experienced laryngitis, breathing difficulties, nausea, burning eyes, headaches, bronchitis, and dizziness, all observable maladies which, as he explicitly told his physician, he thought "were related to his work around chemicals."[8] In contrast, Smith's hearing loss was a slow, progressive disability, and most significantly, there is no evidence that Smith attributed or even suspected that its cause was related to his time spent as an engineer.

In *Albertson v. T.J. Stephenson & Co., Inc.*, the victim suffered severe physical and mental illnesses as a result of exposure to the chemical trichloroethylene (TCE). The court found that Albertson "knew TCE was a dangerous chemical requiring special precautions and that a label on some of the TCE canisters warned against prolonged use."[9] It is not apparent from the record that Smith had such knowledge or notice of the dangers of exposure to loud noise.

A trier of fact might reasonably conclude that Smith did not know the correlation between loud noise and hearing loss, or that Smith reasonably thought he knew already the cause of his ailment. The district court should not, therefore, have rendered a summary judgment.

For the foregoing reasons, the order of the district court granting summary judgment is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

---

**7.** Sophocles, Antigone (1954) (ed. D. Grene and R. Lattimore, transl. E. Wyckoff) Chorus at 171.

**8.** *Clay,* 828 F.2d at 1105.

**9.** *Albertson,* 749 F.2d at 226.