**Samuel H. TANNER, Plaintiff**

v.

**ACADEMY TANKERS INC.,
et al., Defendants.**

No. 1:94–CV–0436.

United States District Court,
E.D. Texas,
Beaumont Division.

June 12, 1995.

Leonard C. Jaques, Jaques Admiralty Law Firm, Detroit, MI, for plaintiff.

Mark A. Freeman, Wells Peyton Beard Greenberg Hunt & Crawford, Beaumont, TX, Hubert Oxford, III, Benckenstein & Oxford, Beaumont, TX, Hollis Horton, Orgain Bell & Tucker, Beaumont, TX, Edward Wesley Johnson, Johnson & Associates, Houston, TX, George Michael Jamail, Bernsen, Jamail & Goodson, Beaumont, TX, Richard Edward Hanson, Walter Joseph Gallant, Innes Mackillop, Brown Sims Wise & White, Houston, TX, Mark Reese Pharr, III, Galloway Johnson Tompkins & Burr, Houston, TX, Peter Thompson, Fitzhugh & Thompson, Houston, TX, Richard Tracy McCarroll, Adam Ira Hauser, Brown McCarroll & Oaks Hartline, Austin, TX, David Bradford Gaultney, Mehaffy & Weber, Beaumont, TX, Richard Bennett Graves, III, Scott Dion Marrs, John Michael Jordan, Beirne Maynard & Parsons, Houston, TX, Paul Withington Gertz, Germer & Gertz L.L.P., Beaumont, TX, and R. Benjamine Reid, Popham Haik Schnobrich & Kaufman Ltd., Miami, FL, for defendants.

## MEMORANDUM OPINION

COBB, District Judge.

Plaintiff Samuel H. Tanner (Tanner) suffers from hearing loss allegedly due to repeated exposure to loud noises while working as a merchant mariner. Defendant General Electric (GE) filed a motion for summary judgment contending that Tanner's personal injury claim is barred by the applicable three year statute of limitations for maritime torts.[1] GE maintains that Tanner had a

---

1. The following defendants have joined in GE's Motion for Summary Judgment: Amerada Hess Corp.; American Trading and Transportation Corp.; Babcock & Wilcox Company; Central Gulf Lines, Inc.; Central Gulf Steamship Corp.; Chas. Kurz & Co.; Chevron Shipping Company; Combustion Engineering, Inc.; IMO Industries, Inc.; Keystone Shipping Co.; Gulf & South American S.S. Co.; Keystone Tankship Corp.; Lykes Bros. Steamship Co., Inc.; Marine Transport Lines, Inc.; Marine Transport Management, Inc.; Mississippi Barge Line Co.; Texaco, Inc.; Union Carbide Corp.; United Fruit Company; Westinghouse Electric Corp.

reasonable opportunity to discover that his loss of hearing was due to work-place noise exposure more than three years before he filed this lawsuit. This court finds that Tanner actually knew, or had a reasonably objective opportunity to learn, whether his hearing loss was due to repeated exposure to loud noises while working as a merchant marine. Because plaintiff failed to submit sufficient evidence to raise a questions of fact, defendants' motion for summary judgment is GRANTED.

## BACKGROUND

Tanner worked as an able-bodied seaman and boatsman in the merchant marine for thirty-four years. He filed this cause of action against a number of shipbuilders and machinery manufacturers alleging, in general, that the products they placed aboard ships produced an inordinate amount of noise which eventually caused him significant hearing loss. Tanner submitted a detailed account of his work history as a merchant marine, including the ships he sailed on and the jobs he performed. Although Tanner did not work in the engine room of the various ships, he maintains he was exposed to an excessive level of noise over his thirty-four year career.

Tanner worked primarily as an able-bodied seaman. An able-bodied seaman watches for obstruction in the ship's path, and maintains equipment and various structures of the ship. Tanner's duties included standing watch at the bow or wing of the bridge to look for obstructions in the ship's path. He also measured the water depth in shallow or unfamiliar territory using a lead line and relayed the information to the bridge. Other duties included turning the wheel on the bridge, stowing cargo and other gear, as well as painting and chipping rust on the decks and superstructure of the ships. As a boatsman, Tanner supervised other able-bodied seamen engaged in cleaning decks, painting the ship, stowing various cargo and performing other duties.

Tanner alleges that he first noticed his loss of hearing in 1987 when he could not hear a ship's caller shouting steering instructions. He continued working until August 27, 1990.

At that time, Tanner contends that a previous eye injury, his hearing loss, coupled with an injury to his right knee, ended his career. At that time, Tanner was also involved in litigation concerning the injury to his left eye. During this litigation, Richard Galloway, a certified rehabilitation counselor, completed a vocational evaluation of Tanner at the request of his lawyer for that suit. In the evaluation report, Tanner claimed he could not work because of the injury to his left eye and his loss of hearing.

In response to the Motion for Summary Judgment in this case, Tanner contends he first knew, or had a reasonable opportunity to learn, whether his hearing loss was due to repeated exposure to loud shipboard noises after he underwent a hearing examination on July 19, 1991. According to the Southern State Hearing Centers, Inc.'s report, Tanner also took a hearing test two to three months prior to Dr. Jerald Ketchum's July 19, 1991 exam. Dr. Ketchum's comments at the July 19, 1991, examination allegedly alerted Tanner that his loss of hearing could be attributable to prolonged exposure to shipboard noise. He maintains that he did not realize that shipboard noise could cause his hearing loss until after this audiological exam. Three years later, Tanner filed this lawsuit for negligence under the Jones Act and for unseaworthiness of each vessel under general admiralty and maritime Law.

## ANALYSIS

### 1. Jurisdiction and Summary Judgment Standard

Tanner invoked this court's jurisdiction pursuant to Fed.R.Civ.P. 9(h) by specifically alleging that the claims were brought under admiralty and general maritime law predicated on 46 U.S.C.App. section 688 *et seq.* As such, the complaint was properly specified as an admiralty claim for purposes of Rule 14(c), 38(e), 82 and the Supplemental Rules for Certain Admiralty and Maritime Claims. *See Bodden v. Osgood,* 879 F.2d 184, 186 (5th Cir.1989).

Before the court is defendant's motion for summary judgment. Summary judgment is appropriate when the movant is able

to demonstrate that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *and see Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).[2]

■ If the movant meets this burden, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1071 (5th Cir.1994) (en banc) (citing *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54). The nonmovant's burden is not satisfied with

> "some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356, by "conclusory allegations," *Lujan,* 497 U.S. at 871–73, 110 S.Ct. at 3180, by "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994), or by only a "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir.1994).

*Little,* 37 F.3d at 1075. At this point, summary judgment is appropriate if the nonmoving party fails to come forward with sufficient facts and law demonstrating a basis for recovery. *Little,* 37 F.3d at 1071.

■ The court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services,* 504 U.S. 451, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. However, this favorable presumption for the nonmovant exists only when the nonmovant presents an actual controversy of fact. The court will not assume controversy when insufficient facts exist to sustain the party's complaint. *Little,* 37 F.3d at 1075; *and see Lujan,* 497 U.S. at 888, 110 S.Ct. at 3188.

### 2. Statute of Limitations Defense

■ Defendants contend that Tanner's cause of action is barred by the three year statute of limitations for maritime torts under 46 U.S.C.A.App. section 763a.[3] The time for filing a cause of action under the Jones Act and general maritime law begins to run when a plaintiff "has had a reasonable opportunity to discover his injury, its cause, and the link between the two." *Crisman v. Odeco, Inc.,* 932 F.2d 413, 415 (5th Cir.), *cert. denied,* 502 U.S. 924, 112 S.Ct. 337, 116 L.Ed.2d 278 (1991), (citing *Albertson v. T.J. Stevenson & Co.,* 749 F.2d 223, 228 (5th Cir.1984)).

■ Both parties agree that, in 1987, Tanner knew that he was suffering from some degree of hearing impairment. The bone of contention is whether Tanner knew or had a reasonable opportunity to discover the cause of his hearing loss more than three years before he filed this lawsuit. Summary judgment in this context is appropriate only if reasonable persons could conclude that, by July 19, 1991, Tanner knew or had objectively reasonable opportunity to discover that repeated exposure to loud shipboard noises had caused his hearing loss. The outcome of this inquiry usually depends on circumstantial evidence and inferences drawn by a trier of fact from the evidence presented.

Defendants rely on *Crisman v. Odeco, Inc.* for the proposition that Tanner discovered his hearing loss in 1987 and, therefore, had a reasonable opportunity to establish the link between his hearing loss and the work-place noise level at that time. *Crisman,* 932 F.2d 413. In *Crisman,* plaintiff brought suit al-

---

2. It is unnecessary for the movant to negate elements of the nonmovant's case. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 885–886, 110 S.Ct. 3177, 3187, 111 L.Ed.2d 695 (1990).

3. 46 U.S.C.A.App. section 763a states that: "[u]nless otherwise specified by law, a suit for recovery of damages for personal injury or death, or both, arising out of a maritime tort, shall not be maintained unless commenced within three years from the date the cause of action accrued."

leging that his hearing loss and hypersensitivity to chemicals was due to his shipboard exposure to petroleum-based chemicals. *Id.* at 414. The court held that Crisman's claims were time barred because he knew or had a reasonable opportunity to discover the critical facts relating to his injuries. *Id.* at 416. The court relied on Crisman's statement in his deposition that he knew at the time of his exposure that the paint and the solvent fumes caused his physical problems. *Id.* at 416. Crisman also stated that his physical problems persisted at work and disappeared when he left work for an extended period of time. *Crisman,* 932 F.2d at 416. Additionally, Crisman's physician explained to him as early as 1979 that the work-place toxins might be causing his physical problems. *Id.*

In response, the plaintiff urges the court that *Smith v. States Marine Intern., Inc.,* 864 F.2d 410 (5th Cir.1989), requires a denial of the Motion for Summary Judgment. In *Smith,* the Fifth Circuit reversed the district court's summary judgment order because *no evidence* existed to show that the plaintiff actually knew of the general correlation between loud noises and hearing loss. *Id.* at 412. The court distinguished *Clay v. Union Carbide Corp.,* 828 F.2d 1103, 1105 (5th Cir. 1987) and *Albertson v. T.J. Stevenson & Co.,* 749 F.2d 223, 226 (5th Cir.1984), by noting that in each of these cases, the plaintiffs' knew that their work around chemicals contributed to their physical problems. *Smith,* 864 F.2d at 413.

Furthermore, the appellate court recognized the plaintiff's affidavit contained explicit statements explaining his thought processes and his failure to ascertain the connection between the engine-room noise levels and his hearing loss. *Id.* at 412. In *Smith,* the lengthy and detailed affidavit of a Dr. Smith, the plaintiff's examining physician, also explained the cumulative nature of hearing loss and the latent nature of this type of occupational disease. *Id.* In that case, defendants' own medical experts further confirmed that many patients with noise-induced hearing loss do not associate loud noises with their own progressive loss of hearing. *Id.*

Because Smith presented detailed summary judgment evidence from an expert witness which raised factual questions as to whether the he knew or had a reasonable opportunity to discover the cause of his hearing problem, it was held that a jury could find that Smith did not have a reasonable opportunity to discover that his hearing loss was due to something other than the aging process. *Id.*

While somewhat analogous to *Smith* in that both plaintiffs suffered hearing loss, the summary judgment proof before this court is sparse indeed. The summary judgment evidence presented shows Tanner knew that he was losing his hearing in 1987. In 1990, Tanner reiterated that fact during the discovery phase in another lawsuit. A vocational expert prepared a report for that litigation which explained that Tanner knew that he suffered from hearing loss. The vocational specialist's report to the plaintiff's lawyer stated "he [Tanner] does not feel he is capable of working as an able-bodied seaman or as a boatsman because he has trouble see [sic] the compass and he claimed his hearing is becoming poor." Tanner's own July 19, 1991 report expressly states that he had at least one other hearing examination prior to July 19, 1991. From 1987 through the litigation of his 1990 lawsuit until July 19, 1991, Tanner certainly had a number of reasonable opportunities to discover the cause of his hearing loss. Tanner submits only his own abbreviated and unsubstantiated affidavit in opposition to the defendants' motion.

Tanner's affidavit alone fails to provide anything more than at best, a scintilla of evidence of whether Tanner did not have an opportunity to discover the cause of his hearing loss. Tanner could have deposed an expert capable of testifying that a reasonable person in Tanner's position would not have discovered the cause of his hearing loss in this case. There is only one paragraph in Tanner's summary judgment proof, his affidavit, that states that he was not aware of the cause before July 19, 1991. There is no report from anyone, no affidavit from an expert concerning the alleged cause of Tanner's hearing loss which he endured for four years prior to his filing of this suit.

Instead, Tanner only provides a thinly veiled attempt to create a fact dispute with an affidavit stating merely that:

> "I first became aware that my hearing loss was caused by the excessively loud noise levels aboard the vessels upon which I sailed on 07/19/91 when I underwent an audiological exam and the hearing specialist, Jerald Ketchum, explained the correlation and connection to me. Further deponent says not."

(emphasis original). A nonmovant's conclusory allegations supported by a conclusory affidavit are insufficient to avoid summary judgment. *Broadway v. Montgomery,* 530 F.2d 657, 660 (5th Cir.1976); *and see Travelers Ins. Co. v. Liljeberg Enterprises, Inc.,* 7 F.3d 1203, 1207 (5th Cir.1993). Tanner's self-serving affidavit alone fails to meet the burden of a nonmoving party in the summary judgment context. "Summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a summary judgment in favor of the nonmovant.'" *Little,* 37 F.3d at 1075–76 (quoting *Armstrong v. City of Dallas,* 997 F.2d 62 (5th Cir.1993)) (emphasis original).

Finding that Tanner failed to meet the burden of a nonmoving party in the summary judgment context, the court holds that Tanner had a reasonable opportunity to discover the cause of his alleged hearing loss. Unlike the affidavits and deposition testimony presented in *Smith,* plaintiff in this case fails to raise an issue of fact to preclude summary judgment. In support of his motion in opposition to defendants' motion for summary judgment, Tanner submitted only a two paragraph affidavit to support his contention that he did not have a reasonable opportunity to discover the cause of his hearing loss. No other affidavits or other summary judgment proof has been presented in the seven months since the motion was ripe for decision to show that Tanner did not have an opportunity to discover the cause of his hearing loss. The court will not assume that such testimony exists.

The defendants properly demonstrated an absence of material fact as to Tanner's failure to meet the applicable three year statute of limitations. Tanner had the burden to designate specific facts to show that a genuine issue existed for trial. Tanner presented no such facts.

For the foregoing reasons, this court GRANTS the defendants motion for summary judgment.