Peter J. **BRENNAN, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**ACE HARDWARE CORPORATION, Defendant.**

No. CV72–L–199.

United States District Court,
D. Nebraska.

April 26, 1973.

Stephen G. Reynolds and Harper Barnes, Kansas City, Mo., for plaintiff.

Thomas Y. Young, Omaha, Neb., for defendant.

## MEMORANDUM OF DECISION

URBOM, Chief Judge.

This action arises under the provisions of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 et seq., and the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 215. The claim is that the defendant has discriminated in its hiring practices because of age. Trial to the court was had on April 19 and 20, 1973, and the matter stands ready for decision.

Issues raised are (1) whether the defendant's Lincoln, Nebraska, branch is a sufficiently separate entity to take it from coverage under the Age Discrimination in Employment Act because the Lincoln branch did not have enough employees to qualify as an employer at the time of the alleged discrimination, (2) whether there was age discrimination by the defendant, and (3) whether the representative of the Secretary of Labor who investigated the alleged discrimination attempted "to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion," as required by the Act. For reasons which follow, I conclude that the defendant is and was an employer within the meaning of the Act, that the defendant violated the provisions of the Act with respect to age discrimination, and that the representative of the Secretary of Labor did not meet the requirements of the Act with respect to conciliation, conference, and persuasion.

This memorandum shall constitute the findings of fact and conclusions of law of the court.

Ace Hardware Corporation is a corporation with its principal office in Chicago, Illinois. It operates warehouse distribution establishments in Atlanta, Georgia; San Francisco, California; Lincoln, Nebraska; and Chicago, Illinois. The defendant is a corporation engaged in an industry affecting commerce. For each work day of at least 20 calendar weeks in the calendar year 1971 the defendant employed at least 25 employees. The defendant's branch office was opened in Lincoln, Nebraska, in late 1971, taking over a part of the territory formerly handled out of the Chicago office and part formerly handled out of Atlanta, Georgia. A computer in the main office in Chicago services all branch offices for ordering and payment of goods and accounting purposes. Although labor relations in Lincoln, Nebraska, are controlled by the local branch, information and advice on problems arising in the Lincoln office are sought from and given by the Chicago office. The present general manager and the present traffic manager were transferred to Lincoln to open the

branch in late 1971 from the Chicago office.

■ There is no doubt that the Lincoln, Nebraska, office does not constitute a separate employer under the Act. The employer is the defendant, as one entity, and its operations clearly meet the definition of an employer under the Act.

Dallas D. Howell, who had been a truck driver for the defendant for about 16 years before November, 1971, assumed the position of traffic manager in that month. He never had hired employees before that and was not aware of the Age Discrimination in Employment Act. He learned that he needed to hire six or seven drivers. Applications already had been received from about 45 persons and he reviewed them and selected from them certain applicants whom he then notified to come in for an interview. During his review of the applications and before the interviews, Howell made notations on the applications. On several of them, particularly on the applications of applicants over the age of 50, Howell wrote some word or comment about age. The application of Byrl A. Prichard bears the comment "52 yrs old Dont Know" written by Howell before he interviewed Prichard. "Age?" was written on the applications of Joseph Elmer Johnson and Robert H. Long before he interviewed either of them. "To [sic] old" was written by Howell on the application of Cecil Raymond Richmond before an interview with him, and the word "No" was handprinted on the applications of Douglas Eugene Rudy, Herbert Jess Grady and Saul E. Tipton at some time before December 29, 1971. Each of these men, except Tipton, was over 50 years of age.

In addition to these comments, some of the applications contain further comments. The application of Tipton contained the comment "No. See accidents." Howell admitted, and the application itself shows, that these comments were written in different types of ink. A further examination of the application shows that Tipton's date of birth was circled in the same ink as the comment "No" was written. Howell stated he wrote "No" when he reviewed the applications. He wrote "See accidents" when he went through the applications to do more checking.

In addition to "Age?" the comment "Okay. Can do the work" was written on Long's application. This comment was also made sometime after the remark "Age?" was written. On Rudy's application "No" was handprinted and "only 21,000 miles per year" was handwritten. On Grady's application "No" was handprinted and "May be good for loading" was handwritten. It is noted that "No" was also handprinted on Tipton's application and "See accidents" was handwritten.

The comment "To [sic] old" was handprinted on Richmond's application. Howell admitted to handwriting the comment "with injury can't unload very good, can't pass D.O.T. tests" at a different and later time.

Donald R. Chleborad, a Department of Labor Compliance Officer, inspected the defendant's files of applications on December 29, 1971, and January 7, 1972. Robert Long was hired by the defendant, but not until after Chleborad had met with the defendant's general plant manager.

Prichard's application was submitted October 28, 1971. On December 1, 2, or 3, he was interviewed by Howell. As a result of the interview, Howell concluded that he was capable of doing the job, and set up a polygraph test, as was customary for all persons before they were hired. Howell did not arrange for a physical examination of Prichard, however, at that time, for no observable reason. The arranging of physical examinations by prospective employees was a usual practice. Howell had determined not to hire more than two employees of the same former employer, and by about mid-December he had hired two men, Nieto and Warnell, who were former employees of Hennis Freight Lines, as

was Prichard. Prichard telephoned Howell, after learning that Howell had hired Nieto and Warnell, asking why he, Prichard, had not been employed, and making an uncomplimentary remark about Nieto. Prichard later came to see Howell about the employment, and Howell agreed to consider him for part-time employment as a truck driver and arranged for a physical examination of Prichard on December 16. Howell told Prichard two or three different reasons for his not having hired Prichard, including the limitation of two on the previous employees of Hennis and that he had drawn "blind" or by lot two out of the several applicants from Hennis, thereby getting Nieto and Warnell. He also told Prichard that he relied "a little" on age.

■ I think it is clear by the greater weight of the evidence that Howell preferred men of some maturity, but was reluctant to take as truck drivers men over the age of 50 years; that he would have hired men over the age of 50 years, if he had not been able to hire enough truck drivers under that age who were qualified; that age was a factor in Howell's mind from the outset of the employment of truck drivers in November, 1971, and remained a factor throughout that employment process; and that Byrl A. Prichard was not hired by the defendant because of age, in violation of the Act.

With respect to conciliation, conference, and persuasion, the Act provides in 29 U.S.C. § 626(b):

"Before instituting any action under this section, the Secretary shall attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion."

Title 29 U.S.C. § 628 permits the Secretary of Labor to issue rules and regulations for carrying out the chapter. A *field operations handbook,* evidently issued pursuant to § 628, sets the procedure to be used by compliance officers (referred to as "CO" in the handbook) for efforts to obtain voluntary compliance through conciliation, conference, and persuasion. Generally the handbook declares that the initial conference shall be used to inform the employer of the provisions of the Act, to determine the application of the Act, to determine what additional investigation may be needed, and to explore the basic policies and practices of the employer. Then the procedures to be followed upon completion of the investigative stage are set out:

"Upon completion of the fact-finding phase of an investigation, a conference will be held with a responsible official who can speak with authority as to the policies and practices of the 'employer,' . . . The conference will in all cases include an adequate discussion of ADEA and of its provisions as applicable in the particular case and the official shall be appropriately advised if the investigation was not subject to full ADEA fact-finding . . . The following procedures apply with respect to disposition of an ADEA investigation:

(1) *Procedure where there are no unresolved ADEA questions.* If the investigation develops facts, which, in the judgment of the CO, adequately prove that the policies and practices with regard to ADEA of the 'employer,' . . . have resulted in a violation affecting one or more identifiable individuals, the CO shall advise the official on the particular point(s) and request the official to 'make whole' the individual or individuals involved, i. e., employ, . . . to achieve compliance including the payment of any BW or damages under ADEA that may be due. . . . If the official contests the CO's determination that an ADEA violation has occurred, he shall be advised that the file is being referred to the AD for review and the official's views on the matter shall be secured in accordance (2) b. below.

(2) *Procedure where there are unresolved ADEA questions.*

\*   \*   \*   \*   \*   \*

b. Where an unresolved question of ADEA compliance exists or where the official contests the CO's determination that an ADEA violation has occurred, the official's views regarding the situation shall be sought. (This may be in writing if the official so elects.)"

These procedures contemplate, when the compliance officer has developed facts which in his judgment adequately show discrimination, that (1) the compliance officer "shall advise the official on the particular point(s)," (2) the compliance officer shall "request the official to 'make whole' the individual or individuals involved, (3) if the employer contests the compliance officer's determination that a violation has occurred, the employer "shall be advised that the file is being referred to the AD for review," and (4) if the employer contests the determination that a violation has occurred, the "official's [employer's] views on the matter shall be secured" orally or, if the official so elects, in writing.

■ As to (1), the evidence is sufficient to show that the investigation had developed in the judgment of the compliance officer that discrimination had occurred and that he did advise the general manager, Charles L. Bates, and the traffic manager, Dallas D. Howell, of the points involved. With respect to (2), the evidence is insufficient to establish that the compliance officer requested either Bates or Howell to "make whole" Byrl A. Prichard. It is true that the compliance officer asked Bates whether he would consider Prichard for employment in the future and was told that he would not, because of Prichard's attitude, but the procedures of the handbook require an affirmative request, not merely an inquiry as to "whether" there would be consideration of employment. This is not merely a technical difference. The Act places upon the Secre-

tary of Labor the duty of attempting to eliminate discriminatory practices and the effecting of voluntary compliance through "conciliation, conference, and persuasion." As to (3), there was no informing by the compliance officer to the employer that the file in fact was being referred for review. Twice the compliance officer informed Bates that the compliance officer would discuss the matter with his supervisor and once told Bates that he, the compliance officer, would "consider" sending the file to the regional office. The Act, as supplemented by the field operations handbook, requires an affirmative declaration by the compliance officer to the employer that the file in fact "is being referred." Again, this is not a meaningless point. Voluntary compliance through conciliation, conference, and persuasion is more likely to be effected when the employer clearly understands that the matter will proceed at a level beyond that of the compliance officer if there is not a voluntary resolution of the dispute. As to (4), the views of Bates were received, but not in light of a positive request of the compliance officer that Bates "make whole" Prichard and an affirmative declaration by the compliance officer that the file was being referred for review. Bates should have been given an opportunity to make his views known in that light. It is also probable that the handbook anticipates that the employer should be caused to realize that he has an option of presenting his views in writing, although in no sense am I holding that failure so to inform Bates was fatal to the adequacy of the conciliation effort.

While it is not altogether satisfactory to the court that a discriminatory practice be permitted to occur without remedy, the Age Discrimination in Employment Act clearly requires, as a prerequisite to legal action, careful procedures of conciliation, conference, and persuasion to obtain voluntary compliance. It may be that voluntary compliance could not have been achieved by a strict following of the procedures outlined in the field

operations handbook. On the other hand, perhaps it would have been. There now is no way to know.

Judgment will be entered for the defendant.