**Jose R. ODRIOZOLA and Gaudencia P. Odriozola, Plaintiffs,**

v.

**SUPERIOR COSMETIC DISTRIBUTORS, INC.; and Germaine Monteil Cosmetic Corporation, Defendants.**

Civ. No. 79–2871.

United States District Court,
D. Puerto Rico.

Feb. 5, 1982.

Antonio Moreda Toledo, Moreda & Moreda Toledo & Rivera, San Juan, P. R., for plaintiffs.

Lidia González, McConnell Valdes Kelley Sifre, Griggs & Ruiz-Suria, San Juan, P. R., for defendants.

## OPINION AND ORDER

CEREZO, District Judge.

This is an action brought against Germaine Monteil Cosmetic Corporation ("Germaine") and Superior Cosmetic Distributors, Inc. ("Superior") for an alleged violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. Secs. 621–634. Codefendant Germaine seeks dismissal for lack of personal jurisdiction. A hearing was held in which Germaine presented the testimony of its Senior Vice-President Mr. Thomas Gorman. At this hearing defendant did not present the testimony of David Balthrop, Michael Lord or Samuel Clemens, all officers and directors of both defendant corporations and subscribers of the affidavits accompanying the Motion to Dismiss. The sworn statements of the affiants who were not available as witnesses at the hearing have not been considered by the Court. The parties agreed to file legal memoranda ten days after receiving the transcript of the hearing. Defendant waived the right to present an additional legal memorandum in the context of what transcribed at the hearing. The answers to interrogatories subsequently filed have been examined together with the transcript of the hearing in order to determine the issues of fact.

The Court finds that the following material facts have been established as undisputed:[1]

1. Superior is a domestic corporation duly registered and authorized to do business in Puerto Rico.

2. Germaine is a New York corporation.

3. Both corporations are subsidiaries of British American Tobacco Industries, Ltd. a United Kingdom Corporation (BATUS) which is not a party to this action.

4. Plaintiff was employed with Superior from 1964 as General Manager and later Vice-President of Superior and was in charge of Superior's "operations" in Puerto Rico.

5. Plaintiff was discharged from his employment on August 17, 1979 as appears from a letter signed by Mr. Bernhard Guenther.

6. Mr. Bernhard Guenther was an employee of Germaine at the time the letter was sent to Mr. Odriozola. Mr. Guenther was Area Director for the Caribbean and worked under the supervision of Germaine's Vice-President International Division, who at that time was Mr. David Balthrop. Mr. Guenther was not an employee of Superior nor a member of the board of directors or officer of Superior.

7. Mr. David Balthrop was Vice-President International Division of Germaine and Vice-President of Superior. Mr. Odriozola reported directly to Mr. Balthrop as his superior.

8. Mr. Guenther as well as his predecessors visited Puerto Rico several times a year according to the requirements of their positions as Area Managers.

9. The members of the Board of Directors of Superior are all either officers or members of the board of directors of Germaine. Superior also shares common officers with Germaine.

10. The pension plan and medical insurance that Superior pays its employees is financed by an affiliate of the BATUS group. Superior does not contribute to this plan although its employees are entitled to the benefits.

11. The facilities used by Superior are owned by an affiliate of the BATUS group. No rent is payed by Superior for these facilities.

12. Marketing strategies and programs, promotions and sales training are provided frequently by Germaine to Superior at no cost.

13. Mr. Thomas Gorman, defendant's witness at the hearing, admitted that although he was a member of the Board of Directors of Superior he had never attended any meeting of said Board nor had he ever received notice of a proposed meeting nor had he ever been in Puerto Rico. According to defendant's answers to interrogatories Mr. Gorman was also Vice-President of Superior. Mr. Gorman admitted that as member of the Board of Directors of Germaine he had attended every meeting.

14. Mr. Gorman admitted that Bernhard Guenther although not an employee of Superior could terminate employees of Superior. Mr. Gorman expressed that Mr. Guenther had this capacity when so directed by his superior at Germaine, Mr. David Balthrop.

15. Plaintiff presented at the hearing various letters determining his salary and bonus which were typed on Germaine's stationery and signed by Mr. David Batchelor. Under Batchelor's name there appeared the title "Vice-President International." On April 7, 1977 Mr. Mickey Braffet wrote a letter to plaintiff (also on the Germaine stationery) whereby cuts in Superior's personnel were requested as well as recommendations on the type of work some personnel had to perform. "Immediate action" was requested of Mr. Odriozola on these employment matters. Mr. Braffet signed the letter in his capacity as Director-Latin America for Germaine.

16. On October 4, 1978 Mr. Bently T. Braffet sent a letter to Mr. Odriozola confirming how Odriozola's 1978 salary was

1. Both parties have failed to follow the procedure required by the local Rule 8(N).

going to be determined. Mr. Braffet had no relationship with Superior whatsoever and signed the letter as Germaine's Area Director for Latin America.

17. The handwritten letter whereby Mr. Odriozola requested anticipated retirement [2] was directed to Mr. David Balthrop as Vice-President International Division, Germaine.

18. After plaintiff was discharged Mr. David Balthrop announced Mr. Odriozola's replacement to their general customers and signed again as Vice-President International.

Pursuant to these undisputed facts we shall examine the law that purportedly favors defendant as moving party.

■■■ Its jurisdictional argument requires that we determine whether Germaine's contacts with Puerto Rico are enough to permit this Court to exercise personal jurisdiction. A separate issue which has arisen is whether Germaine's relationship with Superior is sufficiently entangled as to consider Germaine an employer of Odriozola under ADEA's definition of employer. The latter issue is analyzed under the criteria of a motion for summary judgment. Rule 56 *id.* See: *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). In examining the argument of personal jurisdiction the test to apply is whether defendant has sufficient contacts with a particular forum so as to justify subjecting him to its court's jurisdiction. *World-Wide Volkswagen Corporation v. Woodson, District Judge*, 444 U.S. 286, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). The analysis of a defendant's activities in a forum has to be infused with considerations of fair play and substantial justice because of the constitutional implications of a hastily applied personal jurisdiction. See: *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). Since the ADEA does not provide an independent basis for personal jurisdiction we must look to the law of the state in which the action was brought. Rule 4(e) FRCP. Puerto Rico's long-arm statute provides a possible basis for jurisdiction in this case in Rule 4.7 which establishes that Puerto Rico shall have jurisdiction of a person not within its territorial boundaries if: "... the action or claim arises as a result of the following: (1) Such person or his agent carries out business transactions within Puerto Rico or ..." *P.R. Laws Ann.*, Tit. 32, App. II, R. 4.7.

■■■ In *A. H. Thomas Co. v. Superior Court*, 98 PRR 864 (1970) the Supreme Court of Puerto Rico adopted the following three-pronged test to determine whether *in personam* jurisdiction may be asserted over a nonresident: (1) there must be an act done or consummated within the forum by the nonresident defendant (the act may be done by mail, physical presence is not necessary); (2) the cause of action must arise out of the defendant's action within the forum state and (3) the activity linking defendant, forum and cause of action must be substantial enough to meet due process requirements of fair play. The question of personal jurisdiction is one where a "practical concern for the facts" on a case by case analysis is always necessary in order to apply the often misinterpreted judicial formulas that deal with this matter. *Vencedor Mfg. Co. v. Gougler Industries*, 557 F.2d 886 (1st Cir. 1977). We find that in the record before us there are sufficient facts to fulfill the requirements of this test. Codefendant Germaine's Area Director for Puerto Rico visited the forum on various occasions during the year in his capacity as employee of Germaine. The purpose of the visits were to monitor the marketing of Germaine's products in Puerto Rico. This, coupled with the fact that Germaine sent and sold its products to Superior, a Puerto Rican corporation, is a sufficient voluntary association with the forum. *Vencedor Mfg. Co., ante,* at 890. The repeated visits by Germaine's Area Director to Puerto Rico throughout the years indicates a general pattern of voluntary business activities and a "purposeful availment" of the forum's legal protection. *Id.,* at p. 893. The "rational nex-

2. We do not question at this stage plaintiff's    motives for signing this letter.

us" between Germaine's act in the forum and the cause of action against defendant is clearly established since the letter that officially discharged Mr. Odriozola from his employment was signed by Mr. Bernhard Guenther, an employee of Germaine. *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 904–906 (1st Cir. 1980). It is reasonable to state that a probable consequence of the act performed by Germaine's employee could be a judicial action against Germaine for illegal termination of employment. *Escude Cruz v. Ortho, ante.* The nexus and relationship of the act to plaintiff's cause of action is also evident in view of the fact that Germaine admitted that Mr. Guenther was authorized to dismiss Superior employees if so directed by Mr. Balthrop, the Vice-President of Germaine's International Division and Vice-President of Superior. If Mr. Guenther is not an employee of Superior and has no relation with Superior then Mr. Balthrop can only direct Mr. Guenther to dismiss an employee of Superior when Mr. Balthrop is acting as Vice-President International of Germaine and not as Vice-President of Superior.

This conclusion now leads us to determine whether Germaine's relations with Superior are sufficiently integrated so as to form a single enterprise and therefore to be considered as employer under the ADEA which defines one as any person engaged in an industry affecting commerce or any agent of such person,[3] the term person includes one or more corporations. 29 U.S.C. Sec. 630(a), (b). Under this provision, the courts have considered nominally separate corporations as single employers depending on whether the dominant corporation so controls the other so as to make the subservient corporation a mere agent or instrumentality of the other. *Linskey v. Heidelberg Eastern, Inc.,* 470 F.Supp. 1181, 1184 (E.D.N.Y.1979); *Marshall v. Arlene Knitwear,* 454 F.Supp. 715 (E.D.N.Y.1978) aff'd. in part without op. and rev'd. in part without op. 608 F.2d 1369 (2d Cir. 1979) cited in *Geller v. Markham,* 635 F.2d 1027 (2d Cir.

1980) at p. 1034; *Brennan v. Ace Hardware Corp.,* 362 F.Supp. 1156 (D.C.Neb.1973), aff'd. 495 F.2d 368 (8th Cir. 1974); *Woodford v. Kinney Shoe Corp.,* 369 F.Supp. 911, 916 (N.D.Ga.1973).

The criteria and standards developed in other types of employment discrimination cases when dealing with similar problems in interpreting the definitions of employer have been applied to ADEA cases. See: *Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir. 1979) (Title VII, 42 U.S.C. Sec. 2000e, *et seq.* ) One such criteria has been the formula used by the National Labor Relations Board (NLRB) and adopted by the Supreme Court in *Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.,* 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965). Under this test the following factors are examined: (1) interrelation of operations, (2) common management, (3) common control of labor relations and (4) common ownership of financial control. *Id.* at p. 256, 85 S.Ct. at p. 877; *Mas Marques v. Digital Equipment Corp.,* 637 F.2d 24, 27 (1st Cir. 1980); *Baker v. Stuart Broadcasting Co.,* 560 F.2d 389, 392 (8th Cir. 1977). Another method used by the courts to deal with this situation is by examining the relationships between the organizations to see if there exists an agency relationship that could establish an employment nexus between them. The agency theory is based on the definition of the term employer by the ADEA as including an agent of an employer. The employment nexus is established when one of the corporations has been the agent of the other with respect to employment practices. *Mas Marques, ante,* at 27; *Fike v. Gold Kist, Inc., infra,* at p. 728; *Linkskey v. Heidelberg Eastern, ante,* at 1183. Other courts have approached the problem as one analogous to the *alter-ego* theory developed in the law of corporations. Viewed in this light, the relations between the corporations have to be so intermingled as to demonstrate that separate existence is a "sham." *Mas Marques,*

---

**3.** The other requirements of the ADEA (i.e.: number of employees are not in controversy in   this proceeding.

*ante,* at 27; *Fike v. Gold Kist, Inc.,* 514 F.Supp. 722, 725 (N.D.Ala.1981); *Armbruster v. Quinn,* 498 F.Supp. 858, 862 (E.D. Mich.1980); *Hassell v. Harmon Foods, Inc.,* 336 F.Supp. 432 (W.D.Tenn.1971), aff'd 454 F.2d 199 (6th Cir. 1972). See also: Annotation 49 A.L.R.Fed. 900.

By scrutinizing the corporate relationships in these labor cases through the use of formulas established in the general law of corporations, some courts have given importance to the terminology associated with the *alter-ego* doctrine of corporate personality. In *Fike v. Gold Kist, Inc., ante,* the court distinguished the fact that no parent-subsidiary relationship existed in that case and that the "single employer doctrine" as expressed in the ADEA cases always involved corporations in a parent-subsidiary relationship. Although this observation may be correct, it does not necessarily indicate that the "single employer doctrine" can only be used in cases where one of the corporations is the owner of the majority of stock of the other. We take heed to Justice Cardozo's warning when handling the many metaphors in law which, although devised to clarify a point, may sometimes contribute to enslave our thoughts, *Berkey v. Third Ave. Ry. Co.,* 244 N.Y. 84, 155 N.E. 58, 61 (1926). The one essential matter to be dilucidated either in corporate law or to determine who is the employer in ADEA cases is the degree of *control* one corporation has over the other in order to affix liability where it justly belongs. See: *Krivo Industrial Sup. Co. v. National Distill. & Chem. Corp.,* 483 F.2d 1098, 1102, 1106 (5th Cir., 1973) ("instrumentality doctrine"). See also: Berle, *The Theory of Enterprise Entity,* 47 Colum.L.Rev. 342, 348–350. The fact that one corporation owns the controlling stock of another (parent-subsidiary) is just another fact to be considered in the analysis. It is not the determinative factor nor is it the only key factor that could trigger the scrutiny. There can be situations in which one corporation although not a parent of the other may treat the subservient one as a mere department or division ignoring totally its corporate existence. The relationship to be ascertained is in reality one similar to agency whereby one entity will use another as an instrumentality and will later try to avoid liability by using the fictional corporate entity. See: Murphy, *Corporate Divisions v. Subsidiaries,* 34 Harv.Bus.Rev. 83 (1956).

In any event, we concur with the Michigan District Court in *Armbruster v. Quinn, ante,* at 862 to the effect that the methods devised to determine whether a corporation or corporations should be considered as a single employee under the ADEA are only different means of resolving the same basic inquiry. However, since the end result of whatever method of analysis is used [4] is to determine if a certain corporate entity is to be regarded as an employer within the meaning of that term under ADEA, then the factual analysis should be considered in light of the interrelation between the corporations in matters related to employment. A control of labor relations would necessarily show also the factor of interrelated operations and common management. The NLRB has noted that centralized control of labor and interrelation of operations are the most significant factors in the application of its test. *Joint Council of Teamsters No. 42,* 225 NLRB 209 (1976). The theory that the corporation would be considered an employer if the relationship is one of agency in employment matters is consistent with this view. The "piercing the corporate veil" approach is also consistent with this analysis if one considers that the purpose of said doctrine is not to destroy or shatter a corporate entity but to determine if under a specific set of facts a corporate structure was used to avoid liability. See: *In re Clarke's Will,* 204 Minn. 574, 284 N.W. 876 at 878 (1939) Stone, J. The ADEA in fact does consider that an employer can be various corporations according to the Act's definitions of person and employer. In considering the interrelated corporations as employers the court does not have to eliminate or disregard the existence of one cor-

---

4. Our Circuit has not differentiated between the approaches and has apparently considered all of them to be useful. See: *Mas Marques, ante,* at 27.

poration entirely. It is sufficient for ADEA cases to establish the employment nexus between them in order to consider *both* as employer. The critical question to be answered then is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?

██ In the present case defendant Germaine has not established with the necessary procedural requirements of Rule 56, *ante*, that there is no controversy as to material facts that would entitle this Court to dismiss Germaine as party in this case. The testimony of Mr. Thomas Gorman is filled with uncertainties as to whatever personal knowledge he had of Germaine-Superior operations. In fact, we seriously doubt Germaine's wisdom in bringing Mr. Gorman to testify since it appears that this Germaine executive hardly knew anything about Germaine-Superior's Puerto Rico operations. We consider his statements as to his lack of participation or knowledge of any of Superior Board of Directors meetings even though he was a member of the Board and Vice-President of Superior to be at least a strong indication that Superior's top management corporate structure was hardly even a paper reality. Germaine did not produce any minutes or resolutions that would indicate a real separate corporate management of Superior. It is also significant to note that according to Gorman's testimony, Mr. Bernhard Guenther, an employee of Germaine, had the authority to dismiss employees of Superior when so ordered by the Vice-President of Germaine's International Division, who at the time of Odriozola's termination was Mr. David Balthrop. Mr. Balthrop was also Vice-President of Superior and Odriozola reported to him. From this testimony it seems reasonable to infer that when Mr. Balthrop ordered Mr. Guenther to dismiss plaintiff he was acting in his capacity as officer of Germaine. The letters submitted by plaintiff at the hearing also cast a shadow on Germaine's allegations of unrelatedness with Superior. The letters contain directives as to employment matters including the determination of Mr. Odriozola's salary and bo-

nus and they are either signed by the Vice-President International of Germaine or by Germaine's Area Director. The common pension and medical insurance fund, the fact that an affiliate of the BATUS group pays for Superior's participation in that fund, the services in marketing, management and consultant services provided to Superior by Germaine at no charge, the close relationship between Germaine's area director, the Vice-President of Germaine's International Division with Superior, the use of the building where Superior is located at no charge to Superior, the distribution by Superior of products either produced or distributed by Germaine, are all indicative of a strong presumption that Superior's higher level employees such as Odriozola were under the control of Germaine's International Division. In fact, it appears that Superior was treated as a special subdivision of Germaine's International Division.

This order, however, is directed solely at Germaine's request for summary judgment. The facts, viewed in this context, only indicate that at this stage of the proceedings there are sufficient material facts in controversy so as to preclude summary dismissal. Accordingly, the Motion to Dismiss filed by Germaine Monteil Cosmetic Corporation is hereby DENIED.

SO ORDERED.