### EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

### PREMIER OPERATOR SERVICES, INC. and Digital Network Services, Inc., Defendants.

### No. 3:98–CV–198–BF.

United States District Court, N.D. Texas, Dallas Division.

Oct. 19, 1999.

Jeffrey Charles Bannon, Robert A. Canino, Jr., Equal Employment Opportunity Commission, Dallas, TX, for plaintiff.

Timothy Stuart Perkins, Smith Underwood & Perkins, Dallas, TX, for defendants.

Maxel B. 'Bud' Silverberg, Law Office of Maxel 'Bud' Silverberg, Dallas, TX pro se.

STICKNEY, United States Magistrate Judge.

### ORDER

This is a consent case before the United States Magistrate Judge. Currently before this Court is the *Defendants' Motion for Summary Judgment,* filed April 23, 1999 and *Plaintiff EEOC's Motion for Partial Summary Judgment,* filed April

23, 1999. Based on arguments presented in Defendants' Motion, the Response and Reply thereto, and applicable authority, this Court finds that Defendants' Motion is denied in part and granted in part. Further, based on arguments presented in Plaintiff EEOC's Motion, the Response and Reply thereto, and applicable authority, this Court finds that Plaintiff's Motion is granted.

## I. *Background*

Plaintiff Equal Employment Opportunity Commission ("EEOC") brings this action under Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. §§ 2000e et. seq., and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a), against Defendants, Premier Operator Services Inc. ("Premier") and Digital Network Services ("Digital") on behalf of a class of the Defendants' Hispanic employees, claiming unlawful employment practices on the basis of national origin. *See* Complaint at 1. The EEOC alleges that Defendants' (both Premier and Digital Network Services, Inc.) Hispanic employees were subjected to a discriminatory "Speak–English–Only" policy in violation of Section 703(a) of Title VII. Furthermore, the EEOC contends that this policy had a disparate impact on Defendants' Hispanic employees because the policy placed overly broad constraints on the speaking of Spanish in the workplace without a business necessity justification. The EEOC also claims disparate treatment of the employees because Defendants separated out its work force into groups based on national origin. Additionally, the EEOC alleges Defendants violated Section 704(a) of Title VII by disciplining and discharging Hispanic employees in retaliation for opposing the "Speak–English–Only" policy.

Defendants in this case are related telecommunications companies. Defendant Digital provides network equipment and technical expertise to various long-distance telephone service carriers, and Defendant Premier provides operator services to the long-distance carriers with which Digital has contracts. *See* Brief in Support of Defendants' Motion for Summary Judgment ("Motion") at 3. The employees on whose behalf the EEOC brings this suit ("the class members") were formerly employed by Premier as long-distance operators. *See id.* All of the class members are Hispanic and speak both Spanish and English. *See* EEOC's Response to Defendants' Motion for Summary Judgment ("Response") at 3; *see also* Motion at 3.

By the instant motion, Defendants move for summary judgment on all of the EEOC's claims, including the EEOC's contention that Premier and Digital operate as a joint employer or integrated enterprise. In contrast, the EEOC requests partial summary judgment on Defendants' Affirmative Defenses. Specifically, the EEOC seeks summary judgment for Defendants' laches defense, non-satisfaction of administrative prerequisites defense, and Defendants' defenses against awarding injunctive and compensatory damages.

## II. *Summary Judgment Standard*

Summary judgment is appropriate when the pleadings and the evidence show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Melton v. Teachers Ins. & Annuity Assoc. of Am.,* 114 F.3d 557, 559 (5th Cir.1997). The applicable substantive law identifies those facts that are material and only disputes about those facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). There is a genuine issue of fact if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Society of Fin. Examiners v. Nat'l Ass'n of Certified Fraud Examiners, Inc.,* 41 F.3d 223, 226 (5th Cir.), *cert. denied,* 515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995).

The moving party bears the initial burden of showing that there is no genuine

issue of fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio,* 40 F.3d 698, 712 (5th Cir. 1994). Where the nonmoving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its summary judgment burden by showing an absence of evidence in support of the nonmoving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Once a properly supported motion for summary judgment is presented, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *Elliott v. Lynn,* 38 F.3d 188, 190 (5th Cir.1994), *cert. denied,* 514 U.S. 1117, 115 S.Ct. 1976, 131 L.Ed.2d 865 (1995) (citing *Anderson,* 447 U.S. at 249, 100 S.Ct. 2124). All reasonable doubts and inferences must be decided in the light most favorable to the party opposing the motion. *See Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir.1988), *Thornbrough v. Columbus & Greenville R.R. Co.,* 760 F.2d 633, 640 (5th Cir.1985). Nonetheless, it takes more than "some metaphysical doubt as to the material facts to satisfy this burden." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The nonmoving party cannot avoid summary judgment with only conclusory allegations or unsubstantiated assertions. *See Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888–89, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990); *Hopper v.. Frank,* 16 F.3d 92, 96–97 (5th Cir.1994). Summary Judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

## III. *Discrimination in Employment*

Discrimination in employment requires either a showing of disparate impact or disparate treatment. Title VII covers both intentional discrimination and discrimination by disparate impact. *See Watson v. Fort Worth Bank and Trust,* 487

U.S. 977, 985–91, 108 S.Ct. 2777, 2783–87, 101 L.Ed.2d 827 (1988); *Griggs v. Duke Power Company,* 401 U.S. 424, 430–31, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). The distinction between disparate impact and disparate treatment is factual. *See Watson,* 487 U.S. at 987, 108 S.Ct. at 2785. "[T]he necessary premise of the disparate impact ... may in operation be functionally equivalent to intentional discrimination." *See id.* To prove disparate treatment, a Plaintiff must show an intentional discrimination. *Watson,* 487 U.S. at 986–87, 108 S.Ct. 2777. Disparate impact suggests that a facially neutral policy is in actuality eliciting the same effects as intentional discrimination. *See Watson,* 487 U.S. at 987, 108 S.Ct. 2777.

### A. *Disparate Impact under Title VII*

To establish a *prima facie* case of discrimination by disparate impact, Plaintiff bears the burden of demonstrating that the challenged employment practice causes a significantly discriminatory impact on a protected group. *See Connecticut v. Teal,* 457 U.S. 440, 446, 102 S.Ct. 2525, 2530, 73 L.Ed.2d 130 (1982). Once Plaintiff establishes its *prima facie* case, the burden shifts to Defendant employer to "demonstrate that the challenged practice is job related for the position in question and consistent with a business necessity. 42 U.S.C. § 2000e–2(k)(1)(A) (Supp.1992); *see also Teal,* 457 U.S. at 446, 102 S.Ct. 2525. If Defendant demonstrates a business necessity for the practice, the burden shifts back to Plaintiff to prove that Defendant employer could have used some other nondiscriminatory practice to satisfy the same business necessity. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975)."

In their *Motion for Summary Judgment,* Defendants allege that the EEOC's claim is foreclosed by the Fifth Circuit's decision in *Garcia v. Gloor,* 618 F.2d 264 (5th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981), which upheld an employer's English-only policy

that prohibited employees from speaking Spanish on the job unless they were communicating with Spanish-speaking customers. Defendants maintain that *Gloor* controls because the facts of the instant case are indistinguishable from those in *Gloor*. *See* Motion at 13. Specifically, Defendants argue that their policy required employees to speak English while on duty, unless they received a call from a Spanish-speaking customer. *See id.* They maintain that, like the policy considered by the court in *Gloor*, their policy did not impose a blanket prohibition against speaking Spanish because it permitted employees to converse in Spanish during breaks and personal time, if no non-Spanish speaking employees were present during the discussion *See id.*

*Gloor*, however, does not necessarily control the question presented in the instant case. First, the evidence in the record creates a genuine issue as to the actual parameters of Defendants' English-only policy. The EEOC disputes Defendants' characterization of their policy and submits evidence which tends to show that the policy prohibited all speaking of Spanish on the Premier/Digital premises, including the time during free moments between calls, during lunch in the employee break room, when making personal telephone calls home, and before and after work if inside the Premier/Digital building. *See, e.g.,* Letter for Eric Brown dated April 24, 1996, included in Appendix to Plaintiff EEOC's Brief in Opposition to Defendants' Motion for Summary Judgment ("EEOC's App.") at 223–25. If Defendants' policy was as broad as the EEOC contends, it is significantly different from the policy considered in *Gloor*, which did not apply to conversations during breaks or other employee free time. *See Gloor*, 618 F.2d at 270. Thus, the Court is not convinced that *Gloor* controls the factual situation presented by this case.

Furthermore, in *Gloor*, the Fifth Circuit noted that its decision did not address the situation presented by "a case where an employee inadvertently slipped into using a more familiar tongue" *Gloor*, 618 F.2d at 270. Here, the EEOC alleges that the class members unconsciously, or inadvertently, switched from English to Spanish when speaking informally with other Hispanic employees. *See* Response at 15. The EEOC has submitted evidence, in the form of affidavits and expert reports, to support its contention. Thus, because this case presents the question of whether an English-only policy is discriminatory when it is applied to persons who inadvertently use a language other than English in the workplace, *Gloor* does not control.

■ Finally, *Gloor* was decided prior to the EEOC adopting any specific Guidelines addressing English-only rules. *See Gloor*, 618 F.2d at 268, n. 1 (noting that at the time of the decision, the EEOC had "considered in specific instances whether a policy prohibiting the speaking of Spanish in normal interoffice contacts discriminates on the basis of national origin" but had adopted "neither a regulation stating a standard for testing such language rules nor any general policy, presumed to be derived from the statute, prohibiting them"). EEOC Guidelines are entitled to great deference, *see Albemarle Paper Co.*, 422 U.S. at 431, 95 S.Ct. 2362. As such, the Court concludes that it cannot decide the issues before it without giving some consideration to the EEOC Guidelines which specifically address English-only rules. *See* 29 C.F.R. § 1606.7; *see also Kapche v. City of San Antonio*, 176 F.3d 840 (5th Cir.1999) (vacating district court's grant of summary judgment based on prior case law where district court failed to consider change in administrative regulation).

The EEOC Guideline is codified at 29 C.F.R. § 1606.7 and divides English-only rules into two categories: (1) rules that apply at all times; and (2) rules that apply only at certain times. Rules falling into the first category are presumed to violate Title VII. *See* 29 U.S.C. § 1606.7. Rules falling into the second category, however, are allowed where the employer demonstrates a business necessity for the rule.

*See id.* As discussed above, there is a genuine issue as to whether Defendants' "Speak–English–Only" policy was a blanket policy that applied at all times or whether the policy only applied during certain times and allowed the employees to speak Spanish during breaks and on other personal time. Until the issue of fact is resolved by a fact-finder, the Court cannot apply the test established by 29 C.F.R. § 1606.7.

█ Defendants contend that even if *Gloor* does not control, they are entitled to summary judgment because the EEOC has failed to establish a *prima facie* case of disparate impact. They maintain that their policy did not have a disparate impact on their Hispanic employees because those employees were bilingual and could readily comply with the "Speak–English–Only" policy. *See* Motion at 15. They insist that their Hispanic employees were not disadvantaged because speaking English did not prevent them from performing their duties or speaking to other Hispanic employees. *See id.* at 16. They also argue that their policy had no disparate impact because the Hispanic employees ignored the policy. *See id.* In response, the EEOC argues that Defendants' "Speak–English–Only" rule disproportionately burdened the defendants' Hispanic employees because it precluded them from speaking the language in which they are best able to communicate while having no effect on non-minority employees. *See* Response at 15. The EEOC further maintains that the risk of termination for violating the English-only policy weighed disproportionately on Defendants' Hispanic employees who were prone to lapse into Spanish conversation. *See id.* In support of its arguments, the EEOC points to evidence in the record, including deposition testimony from class members, that demonstrates Defendants' Hispanic employees were better able to communicate with their Hispanic co-workers in Spanish and, thus, were prone to lapse into Spanish conversation. *See* Deposition of Mardia Lira p. 49. EEOC App. at 156; Deposition of Francisco Gracia p. 144, EEOC App. at 129.

Thus, the Court concludes that the EEOC has established a *prima facie* case of disparate impact.

█ Defendants argue that, assuming the EEOC can establish a *prima facie* case, they are entitled to summary judgment because their English-only policy was "necessary and consistent with Premier's business needs." *See* Motion at 18. However, the Court finds that even had the EEOC not established a *prima facie* case of disparate impact, the Court could not determine as a matter of law that Defendants have proven the "Speak–English–Only" policy to be a business necessity. Once Plaintiff has established a *prima facie case* of disparate impact, the burden of proof, not production, shifts to the defendant to establish a business necessity for the employment practice. *See Watson v. Fort Worth Bank,* 487 U.S. at 979, 108 S.Ct. at 2781. In order to prove a business necessity, defendants must demonstrate that the employment practice is "directly related to a prospective employee's ability to perform the job effectively; i.e., it must be necessary to fulfill legitimate business requirements." *See Watson,* 487 U.S. at 979, 108 S.Ct. at 2781. Defendants argue that the policy was necessary (1) to improve customer service by improving the English of their operators; (2) to allow management, who did not speak Spanish fluently to better oversee the work of their subordinates; (3) to create harmony in the workplace; and (4) to address complaints by non-Spanish speaking employees that they were being ridiculed in Spanish by Hispanic employees. *See id.* at 18–19. In response, the EEOC points to evidence in the record, including the affidavit of Eric Brown—president of Premier and Digital, affidavits from Defendants' Hispanic employees, and copies of Defendants' business records, that raise a genuine issue of material fact as to whether such business necessity actually existed. Thus, summary judgment is not appropriate on the EEOC's claims of discrimination based on disparate impact.

## B. *Disparate Treatment*

■ Plaintiff bears the initial burden of proving a *prima facie* case under the disparate treatment theory. *See McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Discriminatory intent or motive is an essential element of Plaintiff's *prima facie* case. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 325 n. 15, 97 S.Ct. 1843, 1849 n. 15, 52 L.Ed.2d 396 (1977). Once Plaintiff establishes a *prima facie* case of intentional discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See id.* If the employer is able to articulate such a reason, the burden shifts back to Plaintiff to show, by a preponderance of the evidence, that he or she was in fact discriminated against and that the reasons put forth by the employer are a mere pretext for accomplishing the discriminatory act. *See id.; see also Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). At all times, Plaintiff bears the ultimate burden of persuading the court that he or she was the victim of intentional discrimination. *See Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *see also United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983).

Plaintiff alleges Defendants intentionally discriminated against the class members in this case by disciplining or terminating those Hispanic employees who opposed its English-only policy. *See* Complaint ¶¶ 8–9. Specifically, the EEOC claims (1) that at least seven class members were terminated on January 16, 1996 for failing to accept the English-only policy by refusing to sign the inter-office memorandum which detailed the specifics of the policy; and (2) that two class members were terminated for signing the policy memorandum "under protest" and subsequently filing charges of discrimination with the EEOC. The EEOC further alleges that Defendants intentionally discriminated against the class members by assigning all the Hispanic operators to one work group and all the non-Hispanic operators to a separate group. *See id.*

Defendants deny that they intentionally discriminated against the class members by implementing or enforcing their "Speak–English–Only" policy. They argue that the policy was established for the legitimate, nondiscriminatory reasons described above and was necessary for the successful operation of Premier's business. Furthermore, while Defendants admit that they separated their employees into two "language groups"—Group 1 was comprised of operators who spoke only English, and Group 2 was comprised of Premier's bilingual operators—they maintain that the separation was done so that Premier could route all its Spanish-speaking customers to operators in Group 2 and not because of any intent to discriminate. Thus, Defendants insist, the EEOC's claims of disparate treatment amount to nothing more than conclusory allegations of discrimination which cannot withstand their motion for summary judgment.

■ As evidence of Defendants' intent to discriminate, the EEOC points to Defendants' hiring records which indicate (1) Defendants immediately terminated those class members who refused to sign the "Speak–English–Only" policy memo and (2) at the same time the "Speak–English–Only" policy was being enforced, Defendants' operator staff went from being totally Hispanic to being predominantly non-Hispanic. The Court finds that Defendants' enforcement of its "Speak–English–Only" policy combined with the other evidence in the record, is sufficient to support a resolution in favor of the EEOC on the question of intentional discrimination. The Court concludes the EEOC has established a *prima facie* case on its claims of disparate treatment. As discussed above, the evidence in the record does not resolve the genuine issue of material fact of whether Defendants' asserted "business" reasons for establishing the English-only

policy are legitimate, nondiscriminatory reasons for terminating the class members. Thus, Defendants are not entitled to summary judgment on the EEOC's claims that the implementation and enforcement of the "Speak–English–Only" policy constituted disparate treatment and intentional discrimination on the basis of national origin.

 The Court does grant Defendants' motion as to the EEOC's claim regarding Premier's separation of its operators into two groups. The EEOC has failed to direct this Court's attention to evidence in the record that suggests Defendants' legitimate explanation for creating the two groups is a pretext for unlawful discrimination. To demonstrate pretext, a plaintiff must produce evidence which proves that defendant's reason for the conduct was false and that discrimination was the actual motive behind the conduct. *See Scales v. Slater*, 181 F.3d 703, 709 (5th Cir.1999). Defendants argue they separated the employees into two language groups in order to route its Spanish-speaking customers' telephone calls to bilingual operators. *See* Materials Submitted in Support of Defendants' Motion for Summary Judgment, Brown Declaration at 3. Plaintiff fails to produce any evidence to suggest that Defendants' reason for separating its employees was false and its conduct actually motivated by discriminatory intent. Therefore, summary judgment is granted as to the claim of disparate treatment by Defendants for separating its employees into two language groups.

## IV. *Retaliatory Discharge*

 The Court now turns to Defendants' motion for summary judgment on the EEOC's claim that the employees were retaliated against based on their opposition to Defendant's "Speak–English–Only" policy and because class members filed complaints with the EEOC. In order to establish that an employer has unlawfully retaliated against an employee, the employee must demonstrate that (1) the employee engaged in statutorily protected activity; (2) the employer took adverse ac-

tion against the employee; (3) there was a causal connection such that but for the protected activity, the employer would not have taken the adverse action against the employee. *See Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1092 (5th Cir. 1995); *McMillan v. Rust College, Inc.,* 710 F.2d 1112, 1116 (5th Cir.1983); *see also Jack v. Texaco Research Center,* 743 F.2d 1129, 1131 (5th Cir.1984) (explaining the "but for" test of the third prong). Defendants argue the EEOC cannot establish a *prima facie* case that the employees who objected to a work-related policy were engaged in a protected activity, and additionally, the EEOC cannot prove the employees were fired because of their objections to the policy. Defendants admit that employees Gracia and Estrada were engaged in a protected activity when they filed an EEOC Charge and that they were later fired. *See* Defendants' Motion for Summary Judgment at 23. Defendants argue the remaining employees were not engaged in a protected activity and did not "oppose" the " Speak–English–Only" policy as that term is defined under Title VII. *See id.* The decision ultimately turns on whether or not the EEOC makes a *prima facie* showing that the remaining employees' opposition to the "Speak–English–Only" policy constituted an activity which balanced with the employer's right to run a business was protected. *See Smith v. Texas Dept. of Water Resources,* 818 F.2d 363, 366 (5th Cir.1987). Not all activity conducted in opposition to an employment practice thought to be unlawful is protected by the opposition clause. *See Smith,* 818 F.2d at 366. Such conduct is not protected if it "so interferes with the performance of [an employee's] . . . job that it renders him ineffective in the position for which he is employed." *See id.* (citing *Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1142 (5th Cir.1981)). Notwithstanding employees Garcia and Estrada, this case hinges on employees who refused to sign a petition stating they would not speak in their native language in addition to opposing other English-only

employer policies. A question of how unpalatable, immoral, or degrading such a policy felt to the employees at the time will be a fact-finder's determination. *See e.g., Meyer v. Brown & Root Const. Co.,* 661 F.2d 369, 372 (5th Cir.1981); *Payne,* 654 F.2d 1130, 1136 (5th Cir.1981); and *Armstrong v. Index Journal Co.,* 647 F.2d 441, 447–48 (4th Cir.1981). Thus, it is for the fact-finder to determine whether or not such refusal actually outweighs Premier and Digital's right to run a business. *See Smith,* 818 F.2d at 366. The Court finds the EEOC has met its burden of establishing a *prima facie* case and summary judgment should not be granted on the issue of retaliatory discharge.

### V. *Integrated Enterprise*

The EEOC alleges that defendants Digital and Premier are an integrated enterprise and Defendants in response pray for summary judgment on behalf of Defendant Digital. Title VII liability attaches only on an "employer." *Garcia v. Elf Atochem North America,* 28 F.3d 446, 450 (5th Cir.1994). The use of the term "employer" is meant to be liberally construed. *Id.* To establish that parent and subsidiary companies or separate business entities are acting as an integrated enterprise there must be evidence of "(1) an interrelation of operations; (2) centralized control over labor relations; (3) common management and (4) common ownership or financial control." *See Trevino v. Celanese Corp.,* 701 F.2d 397, 403–404 (5th Cir. 1983). The critical element in proving the existence of an interrelated enterprise is centralized control over labor relations. *Trevino,* 701 F.2d at 403–404. Furthermore, the question which is most critical to this analysis is, "[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Trevino,* 701 F.2d at 404 (citing *Odriozola v. Superior Cosmetic Dist. Inc.,* 531 F.Supp. 1070, 1076 (D.P.R. 1982)).

The EEOC alleges that Premier and Digital operated together to provide network and operator services for the long distance telephone service industry. *See* Plaintiff EEOC's Response to Defendants' Motion for Summary Judgment at 44. Defendants, however, describe the two entities as separate and distinct businesses. Digital provides network services and switching equipment and Premier provides operators to connect parties and complete long distance phone calls. *See* Affidavit of McCroy, Appendix at 210–13. Eric Brown controlled both Digital and Premier as the President of both companies, and Digital's Vice President, Marvin McCroy, had management authority over the operator center. *See* Brown Dep. at 151–52, Appendix at 85–86; McCroy Dep. at 45, Appendix at 201. Eric Brown was the final decision-maker for both companies and made the final decision in this case. *See* Brown Dep. at 336–37. Accordingly, Eric Brown is the common owner and maintains financial control of Digital and Premier. Understanding labor control to be the critical evidence, the fact that Mr. Brown maintained the employment and financial control over both companies raises a clear genuine issue of material fact as to Digital's employer status. *See id.* It would be premature on the basis of the above facts to grant Defendants' Motion for Summary Judgment to dismiss the action against Digital. The facts do not clearly reveal that the EEOC cannot prove an integrated enterprise under any discernible circumstance. *See Trevino,* 701 F.2d at 404–05 (citing *Everhart v. Drake Management, Inc.,* 627 F.2d 686, 690 (5th Cir.1980)). Thus, summary judgment dismissing Digital is denied.

### VI. *Laches*

It is settled that a district court enjoys considerable discretion in deciding whether to apply the doctrine of laches to claims pending before it. *National Assoc. of Government Employees v. City Public Serv. Bd. of San Antonio,* Texas, 40 F.3d 698, 707 (5th Cir.1994); *Kennedy v. Electricians Pension Plan,* 954 F.2d 1116, 1121 (5th Cir.1992). As long as the facts relevant to laches are undisputed, the abuse of

discretion standard applies in determining whether to grant summary judgment. *National Assoc. of Government Employees,* 40 F.3d at 707.

■ The EEOC claims in its Motion for Partial Summary Judgment that Defendants' affirmative defense of laches should be dismissed for lack of a basis of fact. Defendants contend that the doctrine of laches applies to the unreasonable delay between the time discrimination charges were filed and the time the initial Complaint was filed by the EEOC. *See* Brief in Support of Defendants' Response to Plaintiff's Motion for Partial Summary Judgment at 8. However, the Fifth Circuit has held that the period of time during which conciliation efforts are ongoing should not be counted against Plaintiffs in calculating a period of unreasonable delay for purposes of a laches defense. *See National Assoc. of Government Employees,* 40 F.3d at 708 (citing *Fowler v. Blue Bell Inc.,* 596 F.2d 1276, 1279) ("[A]lthough the doctrine of laches may be available in some cases to bar the EEOC from bringing suit, this bar arises only if the EEOC has delayed unreasonably after it has completed conciliation.")

■ It appears that the EEOC, finding cause against Defendants, issued a "Letter of Determination" on August 6, 1997. The EEOC received no response from Defendants until September 18, 1997 when Defendants refused conciliation. The EEOC filed its original complaint in Federal District Court on January 29, 1998. The doctrine of laches bars the filing of a suit if such filing was inexcusably delayed and defendant was unduly prejudiced by its delay. *See Bernard v. Gulf Oil Co.,* 596 F.2d 1249 (5th Cir.1979), *rehearing en banc,* 619 F.2d 459 (5th Cir. 1980). *aff'd,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); *Fowler v. Blue Bell, Inc.,* 596 F.2d 1276, 1278 (5th Cir. 1979), *cert. denied,* 444 U.S. 1018, 100 S.Ct. 671, 62 L.Ed.2d 648 (1980). The Court finds that it is undisputed that less than four months lapsed between the breakdown in conciliation and the filing of the initial Complaint. Thus, there is no disputed fact as to the time period and a reasonable fact finder would not find unreasonable delay against the EEOC for less than a four month delay in filing its district court Complaint. *See* EEOC's Reply Brief in Support of its Motion for Partial Summary Judgment App. 1–2; 3–11.

■ Defendants have failed to meet the summary judgment standard as to unreasonable delay: therefore, it is unnecessary for the court to turn to the element of undue prejudice. However, even if Defendants had met the requirement for unnecessary delay, they would not have met the element of undue prejudice. Undue prejudice may be demonstrated by a showing that such delay caused witnesses to become unavailable, records to be lost, and personnel to change during the delay period. *See EEOC v. Dresser Industries,* 668 F.2d 1199 (11th Cir.1982). Such a prejudice must cause a "disadvantage in asserting and establishing a claimed right or defense." *See Matter of Bohart,* 743 F.2d 313, 327 (5th Cir.1984). Defendants claim the prejudice includes the unavailability of witnesses who are no longer employed with the companies and unavailability of pertinent records. *See* Brief in Support of Defendants' Response to Plaintiff's Motion for Partial Summary Judgment at 9–10. Specifically, Defendants contend that two key witnesses. Gaytan and McCroy, are no longer employed by Defendants as of August 24, 1996 and July 19, 1998 respectively. *See id.* Additionally, Defendants argue that by adding "all similarly situated employees" in the suit, the EEOC has unfairly prejudiced Defendants. *See id.* at 10–11. However, the Court does not find a causal connection between the EEOC's delay in filing its Complaint and the prejudice of possibly having to account for the back pay of a class of employees. Moreover, Defendants make no specific allegations as to unavailable records. The EEOC's less than four month delay from the time of conciliation to the filing of its

Complaint has not caused any undue prejudice against Defendants in this case. The Court grants the EEOC's motion for partial summary judgment on Defendants' doctrine of laches defense.

## VII. *Administrative Prerequisites for Bringing Suit under Title VII*

■■■ The EEOC also argues that partial summary judgment is warranted on Defendants' affirmative defense that the EEOC has not satisfied the prerequisites for filing this lawsuit. Specifically, Defendants allege that the EEOC failed to satisfy the filing prerequisites because of the "unreasonable delay between the initial Charge of Discrimination filed by Mr. Estrada and Mr. Gracia and the filing of this lawsuit by the EEOC" and this unduly prejudiced the Defendants. *See* EEOC's Motion for Partial Summary Judgment at 6–7. Conditions precedent for the EEOC to file a lawsuit include: (1) filing with the Commission of a timely charge of discrimination at least 30 days before the suit is filed; (2) notice of the charge served on the Respondent; (3) an investigation of the charge; (4) a determination by the Commission that reasonable cause exists to believe that the charge is true; (5) an attempt by the EEOC to eliminate the unlawful employment practices by informal methods of conference, conciliation and persuasion; and (6) inability of the Commission to secure from the Respondent a conciliation agreement acceptable to the EEOC. *See EEOC v. Shell Oil Co.*, 466 U.S. 54, 74–81, 104 S.Ct. 1621, 1633–37, 80 L.Ed.2d 41 (1984); *see also EEOC v. Airguide Corp.*, 539 F.2d 1038, 1040 (5th Cir. 1976). The EEOC establishes that it received timely discrimination charges from the employees more than 30 days prior to filing the suit. *See* Plaintiff EEOC's Substitute Brief in Support of Partial Summary Judgment at 7; App. at 16–17. The EEOC demonstrates that it served notice of charges on Defendants, conducted an investigation, and issued a Letter of Determination on Defendants on August 6, 1997. Plaintiff EEOC's Substitute Brief in Support of Partial Summary Judgment Appendix at 7; App. 16–19. Additionally, the EEOC states that it attempted to conciliate the case and informally resolve the charge against Defendants. EEOC's Substitute Brief at 7; App. at 20–23; defendants' president, Eric Brown, After conciliation efforts were made by the EEOC, Eric Brown, president of Defendant companies, sent a letter to the EEOC on September 18, 1997 stating Defendants had no interest in conciliation. EEOC's Substitute Brief at 7–8, App. at 24; and the EEOC issued a conciliation failure letter to defendants on September 26, 1997. EEOC's Substitute Brief at 8, App. at 25–26.

It appears that the EEOC has met all of the administrative prerequisites to filing a lawsuit as outlined above. Defendants failed to respond to the EEOC's summary judgment on this issue. The Court finds even if Defendants' argument is premised on the EEOC's "unreasonable delay," the Court finds no unreasonable delay for purposes of administrative prerequisites. The Court grants summary judgment in favor of the EEOC on Defendants' affirmative defense that the EEOC did not satisfy the administrative prerequisites for this case.

## VIII. *Relief Requested*

### A. *Punitive Damages*

■■■ The EEOC seeks punitive damages. Specifically, the EEOC alleges that Defendants' employment practices were done with malice or with reckless indifference to the federally-protected right of its employees. *See* Plaintiff EEOC's Original Complaint at 5. Title VII allows recovery in punitive damages if the employer engaged in unlawful, intentional discrimination upon a showing that the employer's practice was carried out with malice or reckless indifference. 42 U.S.C. § 1981a(b), *Farpella–Crosby v. Horizon Health Care*, 97 F.3d 803, 809 (5th Cir. 1996). A Plaintiff may not recover damages if Plaintiff argues the employment practice unlawful because of its disparate impact. 42 U.S.C. § 1981a(a). Thus, in this particular case, Plaintiff must prove a case of retaliation or disparate treatment

in order to recover damages. As stated above, Plaintiff has made a *prima facie* case on both issues. Thus, the Court refuses to rule out punitive damages as a matter of law.

### B. *Injunctive Relief*

[26] Defendants argue that even in the event summary judgment is not granted in this case, the EEOC is not entitled to injunctive relief. The EEOC argues that a permanent injunction is warranted against Defendants because Defendants employment practice is to discriminate on the basis of national origin. *See* Plaintiff's Original Complaint at 5–6. Defendants contend that such relief would be inappropriate in light of the fact that Defendant, Premier, discontinued its "Speak–English–Only" policy on or about August, 1996. *See* Brown Declaration at 3; Serret Declaration at 52. If the Court were to find that Defendants intentionally engaged in a discrimination practice. Defendants may be enjoined from engaging in such practice. .Section 706(g)(1) of Title VII, 42 U.S.C. § 2000e–5(g). Affirmative action may also be appropriate to remedy past unlawful conduct. *See ed.; see also Albemarle Paper Co. v. Moody,* 95 S.Ct. 2362, 2372 (1975) (citing Louisiana v. United States, 380 U.S. 145, 85 S.Ct. 817, 822, 13 L.Ed.2d 709 (1965)). As discussed above, the Court finds the separation of employees for business purposes is legitimate and thus would not warrant injunctive relief based on this fact alone. However, injunctive relief may be appropriate in light of Defendants' "Speak–English Only" policy and alleged retaliation. Even if Defendants have discontinued the "Speak–English–Only" policy, pending factual determination by the Court, a prohibition of future practices similar to the "Speak–English–Only" policy and affirmative action measures may be appropriate. Accordingly, the Court finds that summary judgment on the prayer for injunctive relief is inappropriate considering that such relief may be appropriate pending a factfinder's determination of the issues in the case.

### IX. *Conclusion*

The Court finds that the EEOC has demonstrated genuine issues of material fact with regard to whether Defendants Digital and Premier intentionally discriminated against its employees by enforcing its "Speak–English–Only" work place policy. In fact, the EEOC has demonstrated factual disputes in this case on all but one issue. The EEOC has failed to meet its summary judgment burden with respect to Defendants' affirmative defense that it had a legitimate business reason for separating the Spanish speakers and non-Spanish speakers into separate work groups. Thus, as to the EEOC's allegation that separating the employees in the workplace is disparate treatment, the court grants Defendants' summary judgment. Conversely, Defendants have failed to show that they are entitled to summary judgment as a matter of law based on their affirmative defenses of the doctrine of laches and the EEOC's failure to satisfy administrative prerequisites in this case. Accordingly, it is

**ORDERED** that Defendants' Motion for Summary Judgment is **DENIED IN PART** and **GRANTED IN PART** and Plaintiff EEOC's Motion for Partial Summary, judgment is **GRANTED.**